## ABRAHAM v. SLYMAN.

No. 11607—Opinion Filed May 29, 1923.

(Syllabus.)

1. **Trusts—Constructive Trust — Enforcing Joint Interest in Land Against One Fraudulently Procuring Conveyance to Himself.**

Slyman and Abraham agreed orally to purchase jointly an interest in certain land from Morris, and Morris was intending to convey said interest to Slyman and Abraham jointly, but Abraham interposed and advised the land be conveyed directly to him, to which Slyman objected, contending that the land be conveyed to them jointly. Abraham orally promised if the conveyance was made direct to him, he would hold the land for himself and Slyman jointly, and reconvey when the deed was executed by Morris and wife. Held,

under the facts, a court of equity will lend its aid to enforce a trust on the grounds that Abraham obtained the land by fraud and imposition.

2. **Partnership—Purchase and Sale of Land —Parol Proof—Statute of Frauds.**

An oral partnership agreement to share in the profits and losses arising from the purchase and sale of real estate is not within the statute of frauds, and the existence of such partnership and the interest of the members of the parties therein may be established by parol evidence.

3. **Same—Findings—Evidence.**

Record examined, and held, the finding of the court is not clearly against the weight of the evidence.

Error from District Court, Creek County; Mark Bozarth, Judge.

Action by Ellis Slyman against Joe Abraham to establish joint interest in oil and gas royalty. Judgment for plaintiff, and defendant brings error. Affirmed.

Cheatham & Beaver, Johnston & Harris, and Everest, Vaught & Brewer, for plaintiff in error.

Burke & Swan, for defendant in error.

McNEILL, J. This action was commenced in the district court of Creek county by defendant in error against the plaintiff in error to be decreed the owner of an undivided one-half interest in the oil and gas royalty in certain land in Creek county, and that the plaintiff in error be decreed to hold said interest in trust for the use and benefit of the defendant in error and for specific performance.

The case was tried to the court without a jury, and the court made findings of fact and conclusions of law, and rendered judgment for the plaintiff. The findings of fact are substantially as follows:

(1) That plaintiff and defendant entered into an oral contract to purchase jointly the undivided half royalty interest in land belonging to Mitchell Morris, and in said transaction they stood in the relation of partners, and occupied a fiduciary relation to each other, and it was understood and agreed that each was to have a half interest in the portion of the land purchased, and that said agreement constituted them partners in the purchase thereof.

(2) That the plaintiff relied upon the representations and premises made orally by defendant, and agreed that the defendant, Abraham, might take the deed in his name, and then assign to plaintiff one-half interest in the land conveyed by the deed. That

shortly after the deed was made, the plaintiff tendered one-half of the purchase price, and Abraham refused to convey. The court further found that the defendant fraudulently refused to carry out said contract to convey plaintiff his half interest in the portion of the land purchased, and he still fraudulently and in violation of said contract and agreement of joint purchase made at the time, under fiduciary relations, refuses to convey plaintiff his one-half interest.

The court further found that the plaintiff had expended time and labor and money in ascertaining the land was for sale, and the residence of the allottee, Mitchell Morris, and these facts were unknown to defendant until told to him by the plaintiff. That the time, labor, and services rendered and the money expended by plaintiff induced the sale of the interest in said land by said Mitchell Morris to defendant. That the plaintiff procured the said Morris to sell one-half interest in the royalty for $1,500, all of which service, expense, time, a n d trouble inured to the benefit of defendant, and on account of said service and expenditures aforesaid, and the other circumstances, they are not such that plaintiff could secure adequate compensation in an action for damages. The court then found that the plaintiff was the owner of one-half interest in the interest acquired by the defendant under said deed, and entitled to have a trust declared, and defendant was decreed to hold one-half interest in trust for the use and benefit of plaintiff, and was ordered to convey said interest to plaintiff.

To reverse this judgment, plaintiff in error contends:

(1) The decision of the court is contrary to and against the weight of the evidence.

(2) That the judgment of the court was based upon the theory of a constructive or resulting trust, and amounted to nothing more than an oral agreement to execute an assignment at some future date supported by no consideration.

We will first consider whether the findings of fact made by the court are clearly against the weight of the evidence. The evidence supports, in substance, about the following state of facts: Plaintiffs had for some time been endeavoring to purchase an allotment owned by a negro, Morris. He spent some time and money in locating Morris, and found him living near time prior thereto. Both of these parties Edna, Okla. Plaintiff went to see Morris about purchasing the land, and was advised by Morris that a party from Tulsa was to arrive the next day to close a deal for the land, but informed plaintiff if his party did not come, he would then deal with plaintiff. The plaintiff then went to Beggs, Okla., for the purpose of calling his brother over the telephone, but was unable to locate his brother, so called Abraham, and told Abraham to tell his brother not to come to Beggs. Abraham asked plaintiff why he was at Beggs, and plaintiff replied that he was trying to buy some land, giving the section in which it was located. Abraham replied, "I will take half of it". The plaintiff told him "all right". Plaintiff stayed at Beggs for a day or two, and the party from Tulsa did not arrive, and he made arrangements to meet Morris at Bristow in a day or two to buy the land. Plaintiff returned to Bristow, and in a few days Morris arrived. Several other parties were attempting to buy the land, but by the efforts of plaintiff an agreement was reached with Morris regarding the purchase of one-half of the royalty, and the three parties went to the office of Abraham's attorney to have the deed drawn up. The attorney asked to whom to make the deed, and Abraham spoke up and said, "Make it to me"; and plaintiff said, "No, make it in both our names". Abraham said, "No, make it in my name and as soon as we get Morris' wife to sign the deed, I will make you an assignment". The plaintiff then made no further objection to the deed being taken in Abraham's name. The deed was then made to Abraham, and in a few days Morris' wife signed the deed. The plaintiff then tendered to Abraham his half of the purchase price. A controversy arose, and the evidence supports the contention that Abraham wanted to give plaintiff a receipt for the money, but not to assign him any part of the land, but to hold the title in trust for plaintiff. Abraham, according to the evidence, contended he wanted to hold the title in his name so he could use the profit of the transaction to apply on some notes that he and plaintiff were jointly liable on. The plaintiff and Abraham had been partners in some cotton transaction, and had lost some money. It appears the plaintiff had let Abraham in on another land deal he had made some time prior thereto. Both of these parties are Assyrians.

The facts support the findings of the trial court, both regarding the existence of a partnership and the creation of a trust, which a court of equity will enforce.

These facts bring the case squarely within the rule laid down in the case of McCaleb v. McKinley, 80 Okla. 38, 194 Pac. 105, where the court stated:

"(1) If A. voluntarily conveys land to B., the latter having taken no measures to procure the conveyance, but accepting it and verbally promising to hold the property in trust for C., the case falls within the statute, and chancery will not enforce the parol promise.

"(2) But if A. was intending to convey the land directly to C., and B. interposed and advised A. not to convey directly to C., but to convey to him, promising that if A. would do so he (B) would hold the land in trust for C., chancery will lend its aid to enforce the trust, upon the ground that B. obtained the title by fraud and imposition upon A.

"(3) And although a simple avowal of acquisition for the use of another, whether made contemporaneous with or subsequent to the fact, will not of itself support an allegation of trust, yet it is equally well settled that if one be induced to confide in the promise of another that he will hold in trust, or that he will so purchase for one or both, and is thus led to do what otherwise he would have forborne or to forbear what he contemplated to do in the acquisition of an estate whereby the promisor becomes the holder of the legal title, an attempted denial of the confidence is such a fraud as will operate to convert the purchaser into a trustee ex maleficio."

The representations made by Abraham in having the land deeded to him, and then refusing to convey, amounted to a fraud, and brings the case squarely within the 2nd and 3rd principles announced in the case of McCaleb v. McKinley.

That the facts are sufficient to support the finding that the transaction created a partnership, see Thompson v. McKee, 43 Okla. 243, 142 Pac. 755; Chowning v. Graham, 74 Oklahoma, 178 Pac. 676; Reiser v. Johnston, 65 Okla. 307, 166 Pac. 723.

We think the evidence sufficient to bring the case within the rules above announced, and the findings of the court are not clearly against the weight of the evidence.

For the reasons stated, the judgment of the trial court is affirmed.

JOHNSON, C. J., and NICHOLSON, COCHRAN, and MASON, JJ., concur.