Homer C. McLAUGHLIN, Plaintiff in Error,

v.

LAFFOON OIL COMPANY, a Corporation, Defendant in Error.

No. 40754.

Supreme Court of Oklahoma.

May 7, 1968.

Rehearing Denied July 16, 1968.

604

William A. Vassar, Chandler, for plaintiff in error.

Coffey & Lassiter, by A. Langley Coffey, Tulsa, for defendant in error.

WILLIAMS, Justice.

Plaintiff sued defendant, Laffoon Oil Company, a corporation, on two causes of action, the first for specific performance of an alleged oral agreement to convey certain working interests in specified oil and gas leases and for an accounting based thereon, and the second for a money judgment for one-half of the profits from transactions under an alleged oral agreement concerning other properties.

Plaintiff's petition alleged that in February of 1956, he entered into an oral agreement with defendant, acting by and through its president, A. A. Thornton, wherein plaintiff was to perform certain geological services in connection with the development of certain described tracts of land for oil and gas purposes; that defendant was to undertake the development of said tracts at its own expense and that after such expense was recovered by defendant, plaintiff was to receive specified fractional interests in the concerned oil and gas leasehold estates; that plaintiff had performed all the services required of him under the contract; that defendant had recovered its costs from the proceeds of production of oil and gas; that between 1957 and February of 1962, plaintiff received in advancements from defendant, $9,135.00 for which defendant was entitled to credit in an accounting.

In his second cause of action, plaintiff alleged that the oral agreement also provided for the purchase of certain mineral or royalty interests and for the division of any profits derived from the sale thereof; that defendant had realized a profit of $10,000. of which plaintiff was entitled to half, and that no accounting had been made to him.

Defendant's answer generally denied the allegations by plaintiff and, in addition, raised as defenses the statute of frauds, the statute of limitations and the lack of authority of A. A. Thornton to make such an agreement for defendant corporation, denied the existence of the alleged agreement, and alleged that if there had been a contract plaintiff was guilty of laches in seeking enforcement thereof.

Plaintiff's contention here is that the judgment of the trial court for defendant is not sustained by the evidence and is contrary to law. In support thereof, plaintiff urges that the overruling of defendant's demurrer to plaintiff's evidence amounted to a determination that plaintiff had proved by clear and cogent evidence the existence of the oral agreement between plaintiff and defendant, that the contract was not within the statute of frauds and that the statute of limitations had not run against plaintiff's claim; that, therefore, the general judgment against plaintiff was based solely upon a determination of the trial court that plaintiff's evidence was insufficient to offset the defense of laches.

As this is a case of equitable cognizance, the judgment of the trial court will be affirmed unless such judgment is clearly against the weight of the evidence. Shaw v. Shaw, Okl., 282 P.2d 748. Thus, on this appeal, we must review the evidence submitted below, and if we are of the opinion the judgment is against the clear weight of such evidence in that plaintiff has established the existence of the alleged oral agreement, we must then review the questions of law raised by the pleadings and which were determined adversely to plaintiff by the court's general finding, assuming they are properly presented in briefs for our consideration.

Our first consideration is a detailed examination of the evidence pertaining to the alleged oral agreement.

In brief summary, plaintiff testified that he had obtained a farmout from Sohio Petroleum Company covering its $2\frac{1}{32}$nds interest in the Northwest Quarter of the Northeast Quarter of Section 2, Township 14 N., Range 2 E., Lincoln County, Oklahoma (hereinafter referred to as the "Sohio lease"); that in February, 1956, he orally submitted to defendant, through its president A. A. Thornton, an offer to assign said farmout to defendant if defendant would jointly promote the financing of a well on said lease; that under the terms of this oral agreement, subsequently accepted by defendant, plaintiff and defendant were to share equally in the production of the proposed well; that plaintiff assigned the farmout of the Sohio lease and performed other geological services and assisted in obtaining leases on the remaining interests in Sohio lease; that it took about eight months to acquire the remaining leases, and defendant then drilled a well on said Sohio lease; that as defendant provided most of the financing for the drilling of said well, the oral agreement was amended in December, 1958, to provide that plaintiff was to receive a $\frac{1}{8}$th interest in said Sohio lease, a $\frac{3}{16}$th interest in a lease referred to as the Stewart lease (described as also being in Section 2, T. 14 N., R. 2 E., Lincoln County),

and an overriding royalty interest in a lease referred to as the School Land lease (described as being in the SE$\frac{1}{4}$ of Section 36, T. 15 N., R. 2 E., Lincoln County), plaintiff to receive such interests after defendant had recouped its investment; that at various times plaintiff requested a statement from defendant showing the payout status of the Sohio and Stewart leases but was told it would cost $1000.00 to prepare a statement of this nature and that no funds were available for that purpose; that plaintiff's estimate of the production from said leases to October 1, 1961, and his estimate of the cost of developing the leases, indicated that, as of such date, income received by defendant exceeded the costs of development by $8227.00. Plaintiff also testified that he received advancements totaling $10,777.00 on the income from such interests. Plaintiff further testified that he had, on numerous occasions, informed John S. Lauder, who, in 1959, had purchased 50% of the outstanding shares of defendant, that he had an interest in the specified leases. On cross-examination, plaintiff denied that any advancements from defendant were for salary or as a retainer, but admitted that he had reported a portion of such income to the Internal Revenue Service for social security purposes.

In support of plaintiff's testimony, one Rixleben testified that he was present in February, 1956, when plaintiff recommended to Thornton, then president of defendant corporation, a proposition that they acquire the Sohio and Stewart leases, and that each share equally in the development costs and the proceeds received from such leases. This witness also testified that he was present during December, 1958, when plaintiff and Thornton amended the above agreement to provide that plaintiff was to receive "a $\frac{1}{8}$th interest in the Sohio lease and a $\frac{3}{16}$th interest in the Stewart lease, both interests being subject to their proportionate share of all expenses incurred in putting these properties on production." Rixleben further testified that he had performed services for defendant and that

Thornton had stated to him "that he owned the Laffoon Oil Company."

Defendant called several witnesses, the first of whom was Roy Carmack, a consulting geologist. This witness testified that he had been retained by a third party (not involved in this suit) to negotiate for the possible purchase of certain oil and gas properties owned by defendant. Carmack further testified that during the course of such negotiation he held a number of conferences with Thornton where plaintiff was present, but at no time did plaintiff assert he owned an interest in any of defendant's properties. The witness admitted, however, that he assumed that plaintiff did have an interest in certain properties.

Harry J. Waggoner, defendant's field superintendent for some seven or eight years, testified that he was present when the wells were drilled on the Sohio and Stewart leases; that plaintiff, among others, was used as a geologist on such wells; that plaintiff, while acting as geologist on such wells, never asserted any authority over the drilling operations.

Norman C. Cross, Jr., a C.P.A., testified that he was employed by Lauder in 1959 to examine the books and records of defendant. This examination was made as Lauder was then contemplating the purchase of 50% of defendant's stock. Cross further testified that from his examination, he found no written evidence that plaintiff had an interest in any of defendant's oil and gas properties, but admitted that he had been informed by an employee of defendant that plaintiff might have such an interest. Cross did not attempt to verify this information.

Lauder, who, at time of trial, was president of defendant corporation, testified that he purchased 50% of defendant's shares in 1959; that upon purchasing such shares, he participated in the active management of defendant corporation; that after entering into management, he and Thornton reviewed the employees of defendant, and, at this time, increased the monthly retainer of plaintiff from $100.00 to $200.00; that he was not ever informed that plaintiff had an interest in any of defendant's properties; that after Thornton's death in 1961, he purchased the remaining 50% of defendant's outstanding shares; and, that he was first made aware, by letter in February, 1962, of plaintiff's contention that he owned certain interests.

In rebuttal, plaintiff introduced the deposition of D. Frank Plater, a C.P.A. who had done some accounting work for defendant. Plater testified that, although defendant's records did not show that plaintiff had any interest in certain properties, he (Plater) had been informed by Thornton that plaintiff did have such an interest.

At this time we take note that plaintiff introduced below a deposition of Thornton which plaintiff contended had been introduced in evidence in a previous lawsuit. In the previous lawsuit (being cause No. 16,663, District Court of Lincoln County, Oklahoma), plaintiff therein (not a party to the suit herein) sought to establish his interest in certain oil and gas properties, which properties included the leases involved herein, and joined as defendants, Thornton, Laffoon Oil Company and H. C. McLaughlin. In such deposition, Thornton admitted that McLaughlin had a ⅛th interest in the Sohio lease and a ¹⁄₁₆th interest in the Stewart lease. This deposition was admitted herein over the objection of defendant.

It appears that plaintiff, when offering Thornton's deposition, sought to establish its admissibility under 20 O.S.1961, § 115, which provides for the admission, in certain circumstances, of a certified transcript of the evidence presented in a previous trial. We have examined the record in the previous suit referred to herein and have found that Thornton's deposition was never admitted into evidence therein. Therefore such deposition was not admissible herein under the provisions of § 115, supra. As we are holding that the deposition is not admissible on the basis that it was not part of the transcript of

evidence in the previous trial, we are expressing no opinion as to whether such deposition would meet the other requirements for admissibility provided in § 115, supra.

Although Thornton's deposition might possibly have been admitted below on other grounds, e.g., as an admission against interest, plaintiff established no such other grounds for admission. For these reasons, we are not considering this deposition in our review of the evidence.

It was stipulated that Thornton died on September 9, 1961. This action was filed on May 17, 1962.

As held by this court in the first paragraph of its syllabus in Moree v. Moree, Okl., 371 P.2d 719:

"Oral statements of the trial court, made in announcing judgment do not constitute 'findings of fact' and will not be considered as such to vary the judgment as contained in the journal entry; but such remarks, when properly incorporated in the record, may be examined in determining the correctness of the conclusion on which the judgment rests."

Although the journal entry of judgment recited a finding for the defendant and against plaintiff "on the basis of all of the evidence and the argument of counsel," the record in the present case discloses that, in announcing judgment, the trial court made the following oral statement:

"Let the record show that the Court finds that the plaintiff has failed to sustained his proof because he is guilty of laches in failing to properly prosecute his claim against the Laffoon Oil Company on an oral contract at a time prior to the death of A. A. Thornton, when he knew that A. A. Thornton's death was rather immediate—he was stricken with cancer and that he laid by and waited until after the death of Thornton and after the transfer of this fund, to exercise his rights in any manner on which the Court can enter judgment. Therefore, the Court will enter judgment for the defendant."

It is clear from the record before us that "the transfer of this fund," mentioned in that statement, could only refer to Lauder's purchases of Thornton's stock in the defendant corporation in 1959 and in May of 1962.

Concerning the elements of laches, it is said, in 27 Am.Jur.2d, Equity § 162, page 701:

"As a general thing, a suit is held to be barred on the ground of laches or stale demand where and only where the following facts are disclosed: (1) conduct on the part of the defendant, or of one under whom he claims, giving rise to the situation of which complaint is made and for which the complainant seeks a remedy, as, for example, an invasion by the defendant of the complainant's right, such as the right of possession of property; (2) delay in asserting the complainant's rights, the complainant having had knowledge or notice of the defendant's conduct and having been afforded an opportunity to institute a suit; (3) lack of knowledge or notice on the part of the defendant that the complainant would assert the right on which he bases his suit; *and* (4) injury or prejudice to the defendant or an innocent third person in the event relief is accorded to the complainant or the suit is not held to be barred." (Emphasis supplied)

Even if Lauder could be considered "an innocent third person," as that term is used in this statement from Am.Jur.2d, the evidence does not establish the existence of all of the necessary elements of laches. Consequently, the judgment for the defendant, insofar as it may be based on the equitable doctrine of laches, is contrary to established principles of equity and is clearly against the weight of the evidence, so, cannot be sustained on that theory.

Concerning the oral agreement relied upon by the plaintiff in his first cause of action, the evidence submitted by him clearly establishes the making of such an agreement between him and A. A. Thornton as the president, and owner of all of the

corporate stock, of the defendant corporation, under which plaintiff was to, and did, perform certain services, for which he was to receive a one-eighth interest in the Sohio lease and a one-sixteenth interest in the Stewart lease, and the record is totally devoid of any evidence clearly denying the making or existence of such agreement. The evidence clearly establishes that the defendant corporation accepted the benefits of the plaintiff's services and the benefits accruing under the agreement. The judgment for the defendant cannot be sustained on the theory that no such agreement came into existence or that A. A. Thornton was without authority to enter into such an agreement upon behalf of the corporate defendant, for, on that basis, the judgment would be clearly against the weight of the evidence. However the evidence does not establish any agreement involving any properties other than the Sohio lease and the Stewart lease, and, as to all other properties, the judgment of the trial court is not clearly against the weight of the evidence, and should be, and hereby is, affirmed.

█ Defendant contends that the oral agreement herein is within the statute of frauds (15 O.S.1961, § 136) and therefore unenforceable. We do not agree.

In Kasishke v. Keppler, 158 F.2d 809 (10th Cir. 1947), the Court of Appeals, in a suit arising in Oklahoma, had almost precisely the same fact situation before it as is shown by the following statement from its opinion:

"The trial court found that in March of 1934 Kasishke entered into an oral contract with Keppler whereby Keppler was to use his skill and talents as a geologist in locating and recommending potential oil and gas properties to Kasishke for his approval; that upon approval thereof, Kasishke was to undertake the acquisition and development of such properties at his own expense and that such expense should be repaid to him out of the development. For his services Keppler was to receive $300 a month and a ⅟₁₆th interest in the properties acquired after Kasishke had been reimbursed. * * *"

The Court found that from the above facts a joint venture was created and stated that a contract creating such a relationship need not be in writing under the statute of frauds, citing Nix v. Green, 95 Okl. 247, 219 P. 380; Florence v. Thompson, 92 Okl. 156, 218 P. 800; Abraham v. Slyman, 90 Okl. 31, 215 P. 931; Thompson v. McKee, 43 Okl. 243, 142 P. 755, L.R.A. 1915A, 521. In finding a joint venture, the Court, in *Keppler,* relied on its earlier opinion in Kasishke v. Baker, 146 F.2d 113 (10 Cir. 1944). In this latter decision, the Court stated:

"It is urged that the arrangement did not constitute a joint adventure. It is argued that this follows from the facts that Baker's interest was dependent upon the contingencies already noted; that there was no agreement to share the losses; that there was no equal right of management; that there was no joint interest in the property; that the contract was terminable at the will of either party; and that the enterprise was not limited to a specific venture.

"It is impossible to define the relationship of joint adventure with exactitude and precision. In many respects it is analogous to a partnership, the main difference being that a joint adventure is more limited in its scope of operations than a partnership. In the main, some of the relevant factors of a joint adventure are that there must be joint interest in the property; there must be an agreement, express or implied, to share in the profits and losses from the venture; there must be action and conduct showing cooperation in the property. It has been held that it is not absolutely necessary that there be participation in both profits and losses. In determining whether one shares in the losses, the fact that one works for a nominal salary, thus losing a part of the value of his services, will be taken into account. Oklahoma has held that a joint venture may con-

sist in an agreement to do a single act or in an agreement to engage in some particular line of business."

In Catlett v. Jordan, 206 Okl. 473, 244 P.2d 564, we cited both Kasishke v. Keppler, supra, and Kasishke v. Baker, supra, with approval.

Defendant also contends that plaintiff's action is barred by the three year statute of limitation contained in 12 O.S.1061, § 95 (Second). The basis of this contention is that plaintiff's cause of action accrued either on the date the oral agreement was entered into (February, 1956) or on the date the agreement was amended (December, 1958). As suit was not brought until May, 1962, it is defendant's theory that the statute of limitation has run.

▆▆▆ In our view, plaintiff's cause of action accrued no earlier than the date, not established by the evidence herein, on which defendant's drilling and development expenses incurred on the Sohio and Stewart leases were fully reimbursed. This is in accordance with the terms of the oral agreement. However, the failure to establish the date such expenses were reimbursed does not restrain us from holding herein that plaintiff's cause of action is not barred by the three year statute of limitation. As defendant continued until several months prior to commencement of plaintiff's action to make advancements on the proceeds of such interests, it is our opinion that such statute of limitation was tolled. See 12 O.S.1961, § 101.

Defendant's other contentions (advanced for the first time in this appeal), which relate to Lauder's reliance on record title, etc., when he purchased defendant's stock, are considered inapplicable in this action against the corporate defendant.

As the trial court entered judgment for defendant and consequently did not reach the question of whether defendant's expenses on the Sohio and Stewart leases had been recouped, and did not require any accounting to plaintiff, we are of the opinion this cause should be remanded to the trial court for a determination of the accounting feature of the case.

Reversed and remanded with directions to the trial court to proceed in a manner not inconsistent with the views expressed herein.

BLACKBIRD, BERRY, HODGES and LAVENDER, JJ., concur.

JACKSON, C. J., IRWIN, V. C. J., and DAVISON and McINERNEY, JJ., dissent.

McINERNEY, Justice (dissenting).

In my opinion, a review of the competent evidence establishes that the trial court's judgment, in this matter of equitable cognizance, is amply supported by the evidence. The testimony of the plaintiff is self-contradictory, and is supported, in substance, by only one witness, who is a friend and business associate.

The plaintiff testified that his "advancements" were reported as salary to the Social Security Administration; that he took a written assignment to Thornton four or five weeks before Thornton's death without obtaining his signature or obtaining any other written agreement specifying plaintiff's interests; that he knew Thornton, the only person capable of disputing his claim, was going to die and then waited until three weeks after Thornton's death to first assert the interest claimed here. Plaintiff did not dispute the testimony that he remained silent about his asserted interest during the negotiations between Lauder and Thornton, in his presence, for the purchase by Lauder of Laffoon Oil Company (wholly owned by Thornton) because "Al (Thornton) didn't want me to, it would keep him from selling his company".

The evidence reveals that plaintiff's cause of action is founded on verbal agreements with Thornton. Plaintiff knew that Thornton, after an illness of several months, was

going to die, but did nothing to preserve his asserted interest. The time to resolve any difference with Laffoon Oil Company was during the lifetime of the man with whom he dealt, in this case, Thornton. The defendant would be able to defend the claim during Thornton's lifetime, but was left in a position later of being unable to dispute *what plaintiff said Thornton said.* The mere outline of the problem presented by the plaintiff's inaction best describes the difficulty and prejudice resulting from McLaughlin waiting until Thornton died to sue on an oral agreement between Mc-Laughlin and Thornton.

I believe that the conduct on the part of the plaintiff in delaying his asserted claim, with knowledge of Thornton's imminent death and the opportunity to institute his suit prior thereto, without affording notice to Lauder, the subsequent purchaser, of his asserted right, causing prejudice to defendant by its inability to defend against the belated claim constitutes laches and renders the demand stale. 27 Am.Jur.2d, Equity, § 162. In my judgment, the evidence submitted by McLaughlin, viewed in the light of the record in its totality, fails to meet the requisite standard of persuasion applicable to proceedings of this nature, and fails to establish that an oral agreement to convey an interest in real property did, in fact, exist. In short, I would follow the trial judge's findings and, hence, would affirm his judgment.

There was testimony presented by both parties, some inconsistent and contradictory, the weight and effect of which is to be determined by the trier of the facts. I am of the opinion that the general finding for the defendant is not against the clear weight of the evidence, Shaw v. Shaw, Okl., 282 P.2d 748; Lanford v. Cornett, Okl., 415 P.2d 984, 987; 12 O.S.1961, § 611, cases collected under note 5. I am also of the opinion that the trial court's observation that the defendant was guilty of laches is well taken. A failure to assert a right at the most opportune time leaves open to question whether the right ever did, in fact, exist. This question was resolved in favor of the defendant. 27 Am.Jur.2d, Equity, § 170, p. 716.

I respectfully dissent from the majority opinion for the reasons stated.