1 F.3d 1250
NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 William J. WALKER, Plaintiff-Appellant-Cross-Appellee,
v.
Clary SPENCER, Defendant-Appellee-Cross-Appellant.
 Nos. 92-6276, 92-6290.
 United States Court of Appeals, Tenth Circuit.
 July 19, 1993.
 
 Before LOGAN and BRORBY, Circuit Judges, and BRIMMER,* District Judge.
 ORDER AND JUDGMENT**
 LOGAN, Circuit Judge.
 
 
 1
 After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of these appeals. See Fed.R.App.P. 34(a); 10th Cir.R. 34.1.9. The cases are therefore ordered submitted without oral argument.
 
 
 2
 This appeal stems from a dispute over a contract for a debt. To resolve pending litigation between them, William J. Walker and Clary Spencer entered into a compromise and settlement agreement in January 1979 under which Walker agreed to pay Spencer $976,000 through assignments of income and other means by July 15, 1982. Spencer agreed to account on at least a monthly basis for all credits applicable to the debt. In November 1979, Walker and Spencer entered into a modification agreement that, among other things, acknowledged that the then-outstanding debt was $334,761.66 and stated that unless otherwise noted, all provisions in the settlement agreement remained in full effect. No provision in the modification agreement explicitly changed the July 15, 1982, due date for payment of the debt or Spencer's accounting requirement. Spencer provided only one accounting to Walker, and it indicated that the outstanding debt as of December 31, 1980, was $102,671.74.
 
 
 3
 Pursuant to the settlement agreement, Walker assigned to Spencer all income from certain oil and gas interests from the date of the settlement agreement until July 15, 1982. The modification agreement did not alter this assignment of oil and gas income. However, payments to Spencer of the assigned income continued until August 1990. Walker claims that until September 1990 he was unaware that the oil and gas interests were still generating income or that the income was being paid to Spencer. He asserts that oil and gas income paid to Spencer after December 30, 1980, totaled $191,127.00, of which $142,535.24 was paid after July 15, 1982, when the assignment was supposed to expire. Believing that the oil and gas payments combined with other credits to the debt meant that he had overpaid the amount of the debt, Walker in October 1990 demanded an accounting of all credits against the debt and a refund of the alleged overpayment. Spencer refused to provide an accounting or to refund any overpayment, but he did notify the operator of the oil and gas interests that his agreement with Walker had been completed and that future income should be paid to Walker.
 
 
 4
 On March 21, 1991, Walker filed his complaint in this action seeking a declaratory judgment of his rights under the settlement agreement, modification agreement, and assignments; an accounting of all sums received by Spencer; and judgment against Spencer for any amount paid exceeding the total due under the settlement agreement.[1] In his answer, Spencer asserted that Walker's claim was barred by the statute of limitations. He also asserted a counterclaim alleging that pursuant to the modification agreement Walker agreed to repay the debt, that the modification agreement modified the settlement agreement by removing the due date for payment of the debt, and that the unpaid balance of the debt was $63,576.43, for which he sought repayment from Walker.
 
 
 5
 Spencer moved for summary judgment on Walker's claim on the basis that the modification agreement did not change the July 15, 1982, due date for payment of the debt and that Walker's claim was therefore barred by Oklahoma's five-year statute of limitations for claims based on written contracts. He also moved for summary judgment on his counterclaim, arguing that the debt had somehow been transformed into an open account, that Walker had continued to make payments on the open account until August 1990, that these payments tolled the statute of limitations, and that the counterclaim was therefore not time-barred. In his response, Walker contended that Spencer's failure to provide an accounting tolled the statute because it prevented him from discovering when the debt was paid off and that there remained a factual issue as to who owed whom what.
 
 
 6
 The district court noted that the settlement agreement required full payment by July 15, 1982, and that the assignment of income was also to terminate by this date at the latest. It concluded that Okla.Stat. tit. 12, Sec. 95's five-year statute of limitations for a claim on a written contract barred claims on the debt after July 15, 1987. The court therefore granted Spencer's motion as to Walker's claim. Similarly, though the court did not specifically address Spencer's contention that the debt had turned into an "open account," it concluded that Sec. 95 also barred Spencer's counterclaim. The court noted that, while the parties did not argue it, Okla.Stat. tit. 12, Sec. 101 provides that voluntary payments by a debtor toll the statute of limitations because they evidence the debtor's acknowledgment of the debt. In this situation, apparently because the payments were made by a third-party rather than by Walker, the court concluded that Spencer did not present evidence that Walker had acknowledged the debt such as to toll the statute. It therefore dismissed the action. Both parties appealed the district court's order.
 
 
 7
 This is a peculiar case. We agree with the district court that the settlement agreement itself provided that the debt be paid by July 15, 1982, and that the modification agreement did not change that due date. We also agree that under Sec. 95, an action based strictly on the terms of the agreements was time-barred on July 15, 1987. However, on appeal both parties make the same argument in support of their respective claims--that the continued payments of the assigned oil and gas income to Spencer tolled the statute of limitations, and actions for recovery of the alleged over/underpayments are not time-barred.
 
 
 8
 Section 101, on which the district court partially relied, states that
 
 
 9
 [i]n any case founded on contract, when any part of the principal or interest shall have been paid, or an acknowledgment of an existing liability, debt or claim, or any promise to pay the same shall have been made, an action may be brought in such case within the period prescribed for the same, after such payment, acknowledgment or promise....
 
 
 10
 As the district court noted, to toll the running of the statute under this partial payment rule, "the payment must be voluntary and under such circumstances as to warrant a clear inference that the debtor recognizes the existence of the debt." App. at 181 (emphasis and internal quotation marks deleted) (quoting James v. Wingate, 65 P.2d 452, 453 (Okla.1937)). The focus of the rule is on the acknowledgment of the continuing validity of the debt. "The principle or theory on which part payment removes the bar of the statute is that the payment is an acknowledgment or admission of the existence of the indebtedness which raises an implied promise to pay the balance, or that the payment, by its own vigor, revives the debt, no matter how old the debt may be." Central Nat'l Bank & Trust Co. v. Stettnisch, 821 P.2d 1066, 1067 (Okla.Ct.App.1987). See generally 51 Am.Jur.2d Limitation of Actions Sec. 366 (1970).
 
 
 11
 The partial payment rule of Sec. 101 has been used generally, if not exclusively, by a creditor against a debtor in an attempt to prevent a claim from being time-barred. See, e.g., McLaughlin v. Laffoon Oil Co., 446 P.2d 603, 610 (Okla.1968); James, 65 P.2d at 453; McDannold v. McCoy, 848 P.2d 39, 40 (Okla.Ct.App.1992); Stettnisch, 821 P.2d at 1067. Walker, however, seeks the unusual use of the rule by a debtor to keep the contract for a debt alive. He contends that "[b]y permitting payments to Spencer of the assigned [oil and gas] wells' proceeds after the date the assignments lapsed, Walker, in effect, agreed to continue making payments on the remaining debt, and Spencer agreed to continue receiving them." Appellant's Br. at 17.[2]
 
 
 12
 In the particular circumstances of this case, we believe that Walker's "voluntary" payments and Spencer's willing acceptance of those payments fell within the partial payment rule provided by Sec. 101 and tolled the statute of limitations for an action on the settlement and modification agreements. We realize that Walker probably did not as much voluntarily make the payments as he inattentively allowed them to continue, but we do not see that as an obstacle to his claim. The key here is that Spencer--the party against whom the rule is being asserted--acknowledged the continuing validity of the debt and agreements. Though the modification agreement required Spencer to return to Walker the documents related to the assignment when Spencer was paid in full, Spencer did not return these documents. Spencer stipulated to the fact that he received payments from Walker's oil and gas assignments monthly from July 1982 to August 1990. He also admitted that he did not account for these payments to Walker. Not until October 1990, after Walker had contacted Spencer concerning the payments, did Spencer inform the oil and gas operator that the payments should "revert back to Mr. Bill Walker, as our agreement has been completed." App. at 120. Moreover, in an attempt to have his cake and eat it too, Spencer tried to use the continuing payments as the basis for his counterclaim not being time-barred.[3] Clearly, this is sufficient indication that Spencer acknowledged the continuing validity of both the debt and the agreements until at least August 1990.
 
 
 13
 Thus, under this peculiar fact situation, we conclude that Walker's claim was not time-barred because it was brought within five years of the date of his last payment on the debt. By the same token, of course, Spencer's counterclaim is similarly not barred. The parties therefore may resolve their dispute on the merits.
 
 
 14
 REVERSED AND REMANDED for proceedings consistent with this order and judgment.
 
 
 
 *
 Honorable Clarence A. Brimmer, United States District Judge for the District of Wyoming, sitting by designation
 
 
 **
 This order and judgment has no precedential value and shall not be cited, or used by any court within the Tenth Circuit, except for purposes of establishing the doctrines of the law of the case, res judicata, or collateral estoppel. 10th Cir.R. 36.3
 
 
 [1]
 The complaint was filed in the Northern District of Texas, but on Spencer's motion was transferred to the Western District of Oklahoma
 
 
 [2]
 Spencer argues that because Walker did not raise this argument in the district court, he cannot raise it on appeal. Whether or not to address an issue raised for the first time on appeal is a matter within our discretion. Hicks v. Gates Rubber Co., 928 F.2d 966, 970 (10th Cir.1991). " '[T]he policy of declining to consider an argument not raised below is strongest where the district judge was not aware of the argument.' Richerson v. Jones, 572 F.2d 89, 97 (3d Cir.1978). It is also unfair to the opponent if one party is allowed to argue an issue not raised in the trial forum." Hicks, 928 F.2d at 970. Neither of these considerations are applicable here. The district court did consider Spencer's similar argument, and its analysis is informative. And Spencer certainly cannot claim he was unfairly surprised by this argument on appeal. We therefore will address Walker's argument
 
 
 [3]
 Though Spencer originally asserted that his counterclaim was based directly on the modification agreement, he later altered his claim to make it one based on an "open account." Notwithstanding this inconsistency, Spencer never explained how the debt based on an express written contract could become an open account, nor does it appear likely that he could. See Epperson v. Halliburton Co., 434 P.2d 877, 880 (Okla.1967) (explaining difference between express contract and open account); see also Office of Governor Dep't of Indus. Dev. v. Dalton, 560 P.2d 971, 972 (Okla.1977) (identifying factors necessary to establish open account); Nicholson v. Thixton, 448 P.2d 454, 455-56 (Okla.1968) (same)