CREST RESOURCES AND EXPLORA-
TION CORPORATION, Appellant,

v.

CORPORATION COMMISSION of the
State of Oklahoma, Helmerich & Payne,
Inc. and Woods Petroleum Corporation,
Appellees.

No. 52198.

Supreme Court of Oklahoma.

Sept. 16, 1980.

As Corrected Sept. 22, 1980.

George, Kenan, Robertson & Lindsey by John R. Robertson, Jr., Oklahoma City, for appellant.

Brown & Lockhart by Gordon F. Brown, and James H. Lockhart, Oklahoma City, for appellees, Woods Petroleum Corp. and Helmerich & Payne, Inc.

OPALA, Justice:

Under review here is a refusal by the Oklahoma Corporation Commission [Commission] to vacate its prior pooling order and its failure to reach for decision Lessee's alternative plea for that order's modification. Two questions must be answered: [1] Did two post–order events–the unit operator's alleged private–contract transfer to another of its Commission–conferred unit management responsibility and the successor's submission to the interest holders of an increased chargeable costs' estimate–afford a tenable legal ground for vacation of the prior utilization order? and [2] Did the Commission's refusal to vacate the order leave undetermined Lessee's alternative plea for its modification? We hold: (a) Lessee failed to establish proper grounds for the order's vacation and (b) the Commission did not dispose of Lessee's alternative plea for the order's modification, thus leaving that plea pending before it and undetermined.

In the fall of 1977, Helmerich & Payne, Inc. applied to the Commission for an order pooling various interests in a drilling and spacing unit in Custer County, Oklahoma. After a January 20, 1978 hearing, the Com-

mission allowed the application and named Helmerich & Payne, Inc. as the unit operator [Operator]. The Commission's order recited the projected amount of chargeable drilling costs and provided for a thirty–day election period [1] for the affected lease owners to decide between participation and benefits.

Subsequently, the Operator "assigned" to Woods Petroleum Corporation [Transferee] *all of its rights* under the January 20th pooling order. That order contained *no* provision authorizing transfer of either the operator's status or its management responsibility without prior approval of the Commission. Following receipt of Transferee's revised estimated drilling costs, Lessee [Crest Resources and Exploration Corp.] timely communicated to Transferee its election to participate in the drilling operations. Concurrently with its election, Lessee sought to have the pooling order vacated or, in the alternative, modified. Its application to the Commission stood anchored on the occurrence of certain "vitiating" post–order developments, i. e. the unauthorized succession of another to the designated unit operator's status and the successor's attempted increase in chargeable costs' estimate. Lessee brought this appeal after the Commission refused to vacate its pooling order.

Transferability of the designated operator's status as unit manager under a Commission pooling order presents to us a question of first impression.[2] Lessee asserts the substitution of another operator, coupled with the latter's revision of the estimate of chargeable drilling costs, constitutes a "material alteration"–in a post–decisional

stage–which justifies a vacation of the original pooling order. Lessee's avowed objective is to secure (a) the Commission's designation of a new unit operator, (b) a redetermination of the projected chargeable costs and (c) the allowance of an extended period for the election between working and royalty interests. The denial of vacation is assailed, *inter alia,* as a legally impermissible acquiescence by the Commission in an unauthorized material alteration of its prior pooling order and in the designated unit operator's abdication of its managerial responsibility status.

■ *No* attempted transfer of a unit operator's status is effectual unless it is done by order of the Commission and with its express sanction. Once created by the Commission, the unit operator's status cannot pass to another *via* private–contract arrangement. A release from the Commission–imposed responsibility effected by order of that body is an indispensable prerequisite of a valid change in the unit operator's identity.

■ The managerial responsibility of a designated unit operator in developing for, producing and selling oil or gas from the unitized pool is an exercise of the state police power.[3] That power, once conferred, is nondelegable. If a unit operator by private contract with another does agree to share some or all of his responsibility, the managerial acts must nonetheless continue to be carried out in the name and by the authority of the named unit operator. This is so because the latter remains responsible *qua* operator until he is formally relieved by

1. The election period ended February 19, 1978. Additional 10 days were allowed for payment of the proportionate amount of the estimate.

2. The issue of transferability of designated operator status was raised in *Stoltz, Wagner & Brown v. Duncan,* 417 F.Supp. 552, 560–561 [W.D.Okl.1976], a case dealing with drilling rights under a lease. The court held that such a transfer of rights to one not designated by the Commission as unit operator would not vitiate rights under a lease. In *Stoltz* there was evidence of a custom in the oil and gas industry freely allowing such transfers. The court's decision was based in part. on an analogy to

federal case law which permits a lease to continue even though the well was improperly drilled at a location prohibited by the Commission's order.

3. The Commission's authority to force the pooling of oil and gas interests in an *established* spacing unit is derived from 52 O.S.Supp.1977 § 87.1(e). Compulsory pooling is a reasonable exercise of the state police power to protect the correlative rights of owners in a common source of oil and gas supply. *Helmerich & Payne, Inc. v. Corporation Commission,* Okl., 532 P.2d 419 [1975].

an order of the Commission made upon due notice and a hearing.

■ In short, while the unit operator is free to subcontract any task that is to be performed in developing for, producing or selling oil or gas from the unitized pool, he *may not redelegate to anyone else* his Commission—conferred power to operate the leaseholds as a unit and to safeguard the correlative rights of the interest holders.

■ The pooling order under challenge here provided for a forty–day period within which interest owners may perfect their right of election by paying or furnishing security for their proportionate share of the estimated costs. At the end of this period the property interests of the affected parties came to be vested. They were hence beyond the reach of the Commission's power to modify. Absent some vitiating infirmity in their creation, these rights, once vested, can no longer be vulnerable to extinguishment.[4]

■ The costs' estimate in the prior pooling order constituted but a projection of reasonable expenses to be charged. It did not represent a Commission—fixed limit of liability to be borne. The cost figure always remains subject to adjustment. Until the project's completion, the amount of projected costs–approved as reasonable–lacks the legal attributes of finality. In the event of a cost overrun, if a dispute does arise as to the reasonableness of the expenditures to be charged, the Commission retains primary jurisdiction to adjudicate finally the liability attachable to the interest holders.[5] Neither the designated operator nor his transferee may–without the Commission's approval–impose upon an unwilling interest holder an increase of costs to be charged. A valid submission of drilling costs' estimate for the approval of the Commission may be made only by, or in the name of, the currently designated unit operator.

Lessee's quest for relief included an alternative plea for modification of the pooling order. That plea was premised on (a) the unit operator's abdication of its management power by an unapproved contractual substitution of another in its stead and (b) the successor entity's submission of an increased estimate of chargeable drilling costs. Both the Operator and its Transferee requested—at the hearing on Lessee's application—that the Commission modify the prior pooling order to "reflect" the actual transfer of the operator status. Lessee proceeded first to present the case in support of its plea for vacation. As that plea collapsed for lack of evidentiary support, the Commission properly refused to vacate the pooling order. The alternative claim for modification was never reached for decision. The order under review contains *neither mention nor disposition of the distinctly separate claim for modification.*

■ The unapproved "assignment" of the operator's management responsibility to another did not *per se* constitute a ground for relief by vacation. The transfer sought to be effected here altered neither the unit operator's legal status nor its liability. The successor's submission of an increased cost estimate was of *no* legal effect upon the unwilling Lessee. That estimate–never having been approved by the Commission–came to Lessee in a private communication from one not then occupying the legal status of a unit operator. The unitized interests must therefore stand undisturbed. Lessee simply failed to advance a legally tenable ground for vitiating the prior adjudication and the rights subsequently settled under the pooling order. Lessee's alternative claim for modification was clearly sufficient to warrant full consideration. It failed to receive it.

There was no error in the Commission's refusal to vacate its prior pooling order.

---

4. An order pooling interests, when free from vitiating infirmity, is *res judicata*, but some terms of a prior pooling order may be modified upon changed conditions. *Southern Oklahoma Royalty Owners v. Stanolind Oil & Gas Co.*, Okl., 266 P.2d 633, 637 [1954]; *Wood Oil Co. v. Corporation Commission*, 205 Okl. 534, 239 P.2d 1021 [1950].

5. 52 O.S.Supp.1977 § 87.1(e); *Stipe v. Theus*, Okl., 603 P.2d 347 [1979].

On remand, Lessee's *alternative claim* for modification by redesignation of the unit operator and by redetermination of chargeable drilling costs should be reached for orderly disposition.

Affirmed as modified.

LAVENDER, C. J., IRWIN, V. C. J., and WILLIAMS, HODGES, BARNES, DOOLIN and HARGRAVE, JJ., concur.