**Daniel Kelsay WHITE, Appellant,**

v.

**AMOCO PRODUCTION COMPANY, Appellee.**

No. 58913.

Supreme Court of Oklahoma.

July 16, 1985.

Joe McMillin, Weatherford, for appellant.

John R. Reeves, Steven L. Barghols, Mock, Schwade, Waldo, Elder, Reeves & Bryant, Oklahoma City, and Robert G. Leo, Jr., Amoco Production Co. Denver, Colo., for appellee.

Richard L. Farris, Robert H. Alexander, Jr., Linn & Helms, Oklahoma City, third party impleader (Towner Petroleum Co.)

KAUGER, Justice.

The determinative question presented is whether bonus money must be paid to the owners of unleased mineral interests when the forced pooling application is dismissed at the request of the moving party when drilling operations have proven the land concerned will not produce hydrocarbons.

The appellant, Daniel Kelsey White, (unleased mineral owner) asserts that the appellee, Amoco Production Company (Amoco) significantly delayed the forced pooling proceeding which in turn resulted in an unconstitutional taking of his drilling rights. White also alleges that because two commissioners were absent during a portion of the proceeding he did not receive a fair hearing. Amoco counters that fail-

ure to join the Corporation Commission (Commission) on appeal is a jurisdictional defect. We find that the delay in dismissing the pooling application did not cause diminution of the fair market value of White's drilling rights, that joinder of the Corporation Commission on appeal is not crucial to appellate jurisdiction, and that no timely objection was made to the purported absences of the Commissioners.

White appealed an order of the Commission which dismissed Amoco's pooling application for a 640-acre drilling and spacing unit in Section 24, T12N–R14W, Custer County, Oklahoma. On December 21, 1981, Amoco mailed a letter to White, who owned an unleased interest in Section 25, proposing the drilling of a well in Section 25 to test the Springer formation. After Amoco was unable to negotiate the purchase of an oil and gas lease covering White's mineral interest or to procure White's participation in the drilling of the proposed well, it filed its forced pooling application on December 31, 1981 naming White as one of the respondents. A hearing was scheduled for February 2, 1982 for which proper notice was given to White.

At the hearing, Amoco recommended that Towner Petroleum be designated as the operator of the proposed well. Towner, at the time, was drilling a well at an offset location immediately south of the well site proposed by Amoco. Inexco Oil Company, also a respondent in the application proceeding, protested the application because of a disagreement with Amoco over the fairness of the cash consideration to be paid to those who did not participate in the proposed well. The Report of the Trial Examiner was issued on February 25, 1982 recommending approval of Amoco's forced pooling application, and the report was filed with the Commission on March 10, 1982. Before this date, however, Trans-Western Exploration, Inc., an interested

party, filed exceptions to the report based on its request to share in the pooled acreage. On March 10, 1982, the Commission notified all interested parties that Trans-Western had filed an exception. After settling its differences with Amoco on March 26, 1982, Trans-Western dismissed its exception with the Commission.

During this time, Towner's offset well was determined to be a dry hole. After reevaluation of the geological formation, Amoco concluded that Section 25 would be unproductive, and it sought to dismiss the pooling application April 6, 1982. The hearing was set for June 14, 1982, when, because only one Commissioner appeared, Amoco requested a continuance until July 7, 1982. Amoco's witnesses did not appear at the scheduled hearing and the cause was continued for five days. On July 12, 1982, Amoco's motion to dismiss was sustained. No compensation was ordered paid to any of the parties.

.I

## THE CORPORATION COMMISSION NEED NOT BE NAMED APPELLEE IF THE APPEAL IS TAKEN BY A PRIVATE PERSON

White argues that the Corporation Commission erred in sustaining Amoco's motion to dismiss without providing compensation for damages caused by Amoco's delay in the pooling application proceedings. Amoco contends that the appeal should be dismissed because White failed to join the Commission as a party.

■ The threshold question is whether failure to join the Corporation Commission is a fatal procedural flaw. We find that it is not. Amoco does not cite any authority for its contention, however, the Okla. Const. art. 9, § 20[1] and 52 O.S. 1981 § 113,[2]

---

1. The procedure for appeal from the Oklahoma Corporation Commission is contained in Okla. Const. art. 9, § 20:

   "From any action of the Corporation Commission prescribing rates, charges, services, prac-

tices, rules or regulations of any public utility or public service corporation, or any individual person, firm, corporation, receiver or trustee engaged in the public utility or public service corporation, or any individual, affect-

provide that Corporation Commission orders may be appealed to the Supreme Court without requiring that the Corporation Commission be named as a party—nor do Corporation Commission Rules of Practice, require the Commission to be a party.[3] [The Workers' Compensation Court is required to be a party under the specifications of 12 O.S. 1981 Ch.15, App.2, Rule 1.101, but no similar provision is found for the Corporation Commission. Even under Rule 1.101, failure to name the Workers' Compensation Court is not a jurisdictional defect.[4]] The appeal is lodged properly.

## II

## MATTERS WHICH COULD HAVE BEEN PRESENTED BUT WERE NOT RAISED BEFORE THE COMMISSION MAY NOT BE HEARD FOR THE FIRST TIME ON APPEAL

■ White contends he did not receive a fair hearing before the Corporation Commission because two commissioners were not present during *all* of the testimony and evidence presented. This contention is unsupported by the record, no objection was made, and matters not raised before the Corporation Commission cannot be presented for the first time to this Court on appeal.[5]

## III

## THE POOLING APPLICATION WAS NOT DELAYED SUFFICIENTLY TO DENY WHITE THE FAIR MARKET VALUE OF HIS DRILLING RIGHTS

■ Pursuant to the Okla. Const. art. 9, § 20, the allegation by White of an unconstitutional taking of private property requires this Court to exercise its independent judgment concerning the law and the facts rather than merely deciding whether the Commission's order is sustained by law and substantial evidence.[6] White alleges

---

ed, or by any person deeming himself aggrieved by any such action, or by the State, directly to the Supreme Court of the State of Oklahoma, in the manner and in the same time in which appeals may be taken to the Supreme Court from the District Courts, except that such an appeal shall be of right, and the Supreme Court may provide by rule for proceedings in the matter of appeals in any particular in which the existing rules of law are inapplicable. *If such appeal be taken by the public utility or public service corporation affected by any such action, the State of Oklahoma shall be made the appellee, but in other appeals hereunder, the public utility or public service corporation affected shall be made the appellee...."*

2. Title 52 O.S. 1981 § 113 also provides the procedure for appeal from the Oklahoma Corporation Commission:

"In the manner now provided by law for taking appeals to the Supreme Court from orders, rules or regulations of the Commission affecting transportation and transmission companies, appeals may be taken to the Supreme Court from any order, rule or regulation made, issued or promulgated by the Commission under the provisions of Sections 84–96, inclusive, of this title, (a) by the Attorney General, or (b) by the Conservation Attorney, or (c) by the Director of Conservation, on behalf of the state, or (d) by any person aggrieved by such order, rule, or regulation appealed from...

All appeals under the provisions of this act must be taken by filing in the Supreme Court a petition in error within thirty (30) days from the date on which the order, rule, regulation, judgment, decree or final action of the Commission appealed from shall have been made, rendered or taken by the Commission...."

3. The Corporation Commission Rules of Practice, Rule 28, promulgated on March 30, 1982 provides:

"Appeals:
All proceedings on appeal shall be prescribed by the applicable rules of the Supreme Court of Oklahoma."

4. See also 12 O.S. 1981 Ch. 15, App. 2, Rule 1.54.

5. *State ex rel. Cartwright v. Okla. Natural Gas,* 640 P.2d 1341, 1346 (Okla.1982).

6. The Okla. Const. art. 9, § 20 provides in pertinent part:

"... The Supreme Court's review of appealable orders of the Corporation Commission shall be judicial only, and in all appeals involving an asserted violation of any right of the parties under the Constitution of the United States or the Constitution of the State of Oklahoma, the Court shall exercise its own independent judgment as to both the law and the facts...."
See also *El Paso Natural Gas Corp. v. Com'n,* 640 P.2d 1336, 1338 (Okla.1982); *Southwestern Bell*

that his right to lease his mineral interests was converted unconstitutionally during the pendency of Amoco's pooling application. He argues that during the period of conversion his property rights were held captive and that the lease value of his mineral rights dropped precipitously. Amoco argues that as a matter of law neither White's mineral rights nor their lease value were converted and, additionally, White made no effort to lease his mineral rights to others during the pendency of the pooling application although the law he now challenges permits such an option. White admittedly had exercised that option under similar circumstances in the past.

The evidence presented by Amoco at the dismissal hearing revealed that the Towner-Dick well had failed to encounter the formation which Amoco believed was under the proposed pooling area. Witnesses testified that it would be economically wasteful for Amoco to pursue its pooling application under those circumstances. The pooling statute, 52 O.S.Supp.1982 § 87.1, provides that the Corporation Commission has the power to prevent .waste, protect the correlative rights of interested parties, and establish drilling units when it determines that a common source of supply lies under an area.[7] In this case, the Commission could not further the aims of the statute by granting the pooling order.

Finally, we must determine if the Commission's denial of the pooling order resulted in a taking as alleged by White. Amoco contends that because property interests of the affected parties are not vested until the election period ends,[8] White could have leased the property to another interested party instead of waiting for the Commission's order. The election period, depending on the order, is the time which the Commission allows for the owner to decide whether to participate in the drilling of the well or to receive a cash bonus. The usual amount of time granted is 15 days after the date of the order.[9] Because White's title could not be affected until after a forced pooling order was granted, his mineral rights could have been leased during the pendency of the pooling application.

We cannot find a deprivation or loss of any mineral or property rights until after the Commission enters an order—only then is a property owner's status changed with respect to his/her land. The dismissal of the forced pooling application was not an unconstitutional taking of White's drilling rights when an order was never entered, and the land concerned would not produce hydrocarbons. The Corporation Commission's order is sustained.

SUSTAINED.

SIMMS, C.J., DOOLIN, V.C.J., and HODGES, LAVENDER, HARGRAVE, WILSON and SUMMERS, JJ., concur.

OPALA, J., concurs in judgment only.

---

*Tel. Co. v. State,* 204 Okla. 225, 230 P.2d 260, 268 (1951).

**7.** In pertinent part, the pooling statute, 52 O.S. Supp.1982 § 87.1 provides:
"... (a) To prevent or to assist in preventing the various types of waste of oil or gas prohibited by statute, or any of said wastes, or to protect or assist in protecting the correlative rights of interested parties, the Commission, ... shall have the power to establish well spacing and drilling units ... or may establish, reestablish, or reform well spacing and drilling units ... when the Commission deter-

mines that a common source of supply contains predominantly oil underlying an area or areas...."
See also *Tenneco Oil Co. v. El Paso Natural Gas,* 687 P.2d 1049, 1053 (Okla.1984).

**8.** *Tenneco Oil Co. v. El Paso Natural Gas,* see note 6, supra; *Crest Resources v. Corporation Commission,* 617 P.2d 215, 218 (Okla.1980).

**9.** Nesbitt, "A Primer on Forced Pooling of Oil and Gas Interests in Oklahoma", 50 O.B.J. 648, 652 (1979).