2009 OK CIV APP 16

**NEW DOMINION, L.L.C.,**
Applicant/Appellee,

v.

**C. Mike MASON, Respondent/Appellant.**

**No. 104,334.**

Court of Civil Appeals of Oklahoma, Division No. 1.

Sept. 12, 2008.

Rehearing Denied Oct. 10, 2008.

Certiorari Denied Jan. 29, 2009.

12 O.S.2001, ch. 15, app. 1, we deny their request without prejudice to the filing of an appropriate motion.

Ron Barnes, Crutchner, Browers & Barnes, P.L.L.C., Tulsa, OK, and Fred M. Buxton, Dawn M. Beckert, Fred M. Buxton, P.L.L.C., Tulsa, OK, for Applicant/Appellee.

William Hicks Huffman, Huffman & Thomas, Tulsa, OK, and Richard James, Richard James, P.C., Stroud, OK, for Respondent/Appellant.

Michele Craig, Sally Shipley, Oklahoma City, OK, for Corporation Commission.

CAROL M. HANSEN, Judge.[1]

¶ 1 Respondent/Appellant, C. Mike Mason, seeks review of a pooling order of the Oklahoma Corporation Commission (Commission) to the extent it allowed Applicant/Appellee New Dominion, L.L.C. (New Dominion), as the operator of a force-pooled unit, to charge Mason, a participating working interest owner, a fee in excess of actual expenditures for saltwater disposal. We reverse, holding the Commission's order violates 52 O.S.2007 § 87.1(e), and remand for determination of the actual expenditures for saltwater disposal. We otherwise affirm the pooling order.

¶ 2 New Dominion filed an application before the Commission to pool the oil and gas interests in a common source of supply un-

---

1. This appeal was withdrawn from assignment to the Court of Civil Appeals—Tulsa and assigned to the Court of Civil Appeals—Oklahoma City on August 6, 2008.

derlying a quarter section in Pottawatomie County, Oklahoma (Unit). New Dominion alleged it was the owner of a right to drill in the Unit and sought to be designated operator of the Unit. The application listed Mason as the sole respondent. Mason protested and the Commission set the matter for hearing.

¶ 3 At hearing, New Dominion's landman testified New Dominion owned an 87.5% interest in the subject unit and Mason owned the remaining 12.5% interest. She said New Dominion had previously pooled the unit but did not have an updated address for Mason. New Dominion refiled the pooling after learning Mason's address. The landman testified the repooling was taking place after the well had been drilled and was known to be a producing well.

¶ 4 New Dominion's engineer testified the Unit well was part of a project to produce gas from the Misener–Hunton formation by dewatering the reservoir to allow the gas to expand. She said the project included over 100 producing wells and 16 saltwater disposal wells. New Dominion established the project with its partners in 2002 and owns the saltwater disposal infrastructure. The engineer said the saltwater produced by the Unit well went to two disposal wells, the Turner and the Pruitt. She said New Dominion charged a saltwater disposal fee of $.50 per barrel on most of its dewatering projects, except those in Oklahoma County, where it charged $1.00 per barrel. She testified the $.50 per barrel fee was "a fair and reasonable cost" that has "been established in pooling orders." She agreed she did not arrive at that figure by calculating actual disposal costs. She agreed she could calculate the actual cost for disposing of the salt water, but she had not done that calculation and did not have with her the information necessary to do it.

¶ 5 The engineer testified New Dominion charged its original group of investors in the Unit well a saltwater disposal access fee of $175,000.00 plus a monthly allocation of the operating expenses on the Turner and Pruitt saltwater disposal wells. She said New Dominion did not propose to treat a pooled party in the same manner because the pooled party only participated in this one well and did not take the risk as an original investor in the entire project.

¶ 6 Mason's certified public accountant (CPA) testified he reviewed the costs of the Unit well. He testified New Dominion had charged the participants in the Unit well the total sum of $178,659.00, including the access fee of $175,000.00, for the disposal of 1,282,333 barrels of water, which equated to a charge of $.1393 per barrel. He agreed New Dominion provided him numbers showing the costs to drill, complete, and equip the Pruitt and Turner saltwater disposal wells totaled $1,092,185.00. The CPA agreed those two disposal wells serviced eighteen producing wells, resulting in allocation of approximately $60,000.00 in disposal costs per producing well or $.05 per barrel.

¶ 7 Mason testified he had notified New Dominion he would participate as a working interest owner in the Unit well.

¶ 8 New Dominion recalled its landman and engineer as rebuttal witnesses. The landman controverted her own earlier testimony regarding New Dominion's ownership in the Unit, testifying New Dominion did not own any interest in the Unit, but had a contract with 87.5% of the working interest to operate the Unit. The engineer testified other participating working interest owners in other units in the project were paying $.50 per barrel for saltwater disposal under other pooling orders.

¶ 9 The Commission entered its order granting New Dominion's pooling application and appointing New Dominion as operator. It adopted by reference the report of its referee, which reasoned New Dominion did not have ownership in the Unit and therefore provided saltwater disposal services as a third party. It concluded the Commission had no control over the price charged by New Dominion for its service and could only determine whether the charge was reasonable. The Commission found the $.50 per barrel fee was reasonable and ordered it to be included as the charge to a pooled participant for disposal of saltwater for any well drilled pursuant to its order.

¶ 10 Mason appeals from the Commission's order, contending the Commission erred in allowing the operator to charge force-pooled participants a fee for saltwater disposal instead of its actual costs. We agree. Pursuant to 52 O.S.2007 § 87.1(e), a "pooling order of the Commission shall make definite provisions for the payment of cost of the development and operation, which shall be limited to the actual expenditures required for such purpose not in excess of what are reasonable, including a reasonable charge for supervision." The actual expenditures to which the statute refers are those of the Commission-appointed operator. In *Crest Resources and Exploration Corp. v. Corporation Commission,* 1980 OK 133, 617 P.2d 215, 217–218 (footnote omitted), the Court discussed the power and duty of the operator:

> The managerial responsibility of a designated unit operator in developing for, producing and selling oil or gas from the unitized pool is an exercise of the state police power. That power, once conferred, is nondelegable. If a unit operator by private contract with another does agree to share some or all of his responsibility, the managerial acts must nonetheless continue to be carried out in the name and by the authority of the named unit operator. This is so because the latter remains responsible qua operator until he is formally relieved by an order of the Commission made upon due notice and a hearing.

> In short, while the unit operator is free to subcontract any task that is to be performed in developing for, producing or selling oil or gas from the unitized pool, he may not redelegate to anyone else his Commission-conferred power to operate the leaseholds as a unit and to safeguard the correlative rights of the interest holders.

¶ 11 In the present case, the designated unit operator is New Dominion. New Dominion, in exercising the Commission-conferred police power and managerial responsibility, may not charge the force-pooled participants in excess of its actual expenditures, plus a reasonable charge for supervision, for the development and operation of the well. New Dominion's ownership, or lack thereof, of a working interest in the unit is of no effect to the issue of whether New Dominion may charge a disposal fee in excess of actual expenditures. Had New Dominion subcontracted saltwater disposal to another entity for a $.50 per barrel fee, or had another entity been designated operator and subcontracted the saltwater disposal to New Dominion for that fee, we would not disturb the Commission's approval of the charge. However, under the facts in this case, New Dominion is not a third-party service provider but is the Commission-designated operator. Section 87.1(e) controls the amount it may recover from force-pooled participants. The Commission erred in approving charges in excess of those allowed by statute.

¶ 12 In appeals from Commission orders issued under the provisions of Sections 84 through 96 of Title 52, the Court may modify the order as warranted by the record. It may not remand the matter to the Commission for additional testimony unless the record is insufficient to enable the Court to determine and make a proper order. 52 O.S.2001 § 113. We find the record in this case is insufficient to enable us to determine New Dominion's actual expenditures for saltwater disposal allocable to the Unit well. Therefore, we must remand this matter to the Commission.

¶ 13 The Commission's order is REVERSED to the extent it allowed New Dominion to charge force-pooled participating working interest owners a fee in excess of actual expenditures for saltwater disposal. We REMAND for determination of the actual expenditures for saltwater disposal. We otherwise AFFIRM the order.

ADAMS, P.J., and JOPLIN, J., concur.