2010 OK 12

**KEOTA MILLS & ELEVATOR,**
Appellant/Plaintiff,

v.

**Othel GAMBLE, Jr., Appellee/Defendant.**

No. 103,149.

Supreme Court of Oklahoma.

Feb. 16, 2010.

Rehearing Denied Dec. 6, 2010.

Marc L. Bovos, Poteau, OK, for Plaintiff/Appellant.

Douglas W. Sanders, Poteau, OK, for Defendant/Appellee.

KAUGER, J.:

¶ 1 This cause concerns an attempt to recover on a defaulted promissory note. The dispositive question presented is whether partial payment on the note extended the time within which to bring an action. The parties stipulated that the issue was whether the suit was time-barred by the five year limitation period of 12 O.S.1981 § 95,[1] which was in effect in 1989 when the note was executed, or the six year limitation period of the Uniform Commercial Code (UCC) 12A O.S. Supp.1992 § 3–118(a),[2] which became effective January 1, 1992.

¶ 2 However, reliance on only these statutes fails to take into consideration 12 O.S. 2001 § 101,[3] which has remained unchanged since its enactment in 1910 and which, pursuant to 12A O.S.2001 § 103,[4] supplements the UCC. Section 101 provides, in effect, that partial payment extends the time within which to bring an action in any case founded on contract. Therefore, we hold that the action was timely because it was brought within three months of the last partial payment in 2001.

### FACTS

¶ 3 The plaintiff/appellant Keota Mills and Elevator (Keota) entered into a promissory

---

1. Title 12 O.S.1981 § 95 provides in pertinent part:
 A. Civil actions other than for the recovery of real property can only be brought within the following periods, after the cause of action shall have accrued, and not afterwards:
 1. Within five (5) years: An action upon any contract, agreement, or promise in writing;
 . . .

2. Title 12A O.S. Supp.1992 § 3–118(a) provides:
 (a) Except as provided in subsection (e) of this section, an action to enforce the obligation of a party to pay a note payable at a definite time must be commenced within six (6) years after the due date or dates stated in the note or, if a due date is accelerated, within six (6) years after the accelerated due date.
 The comment to this section also provides in pertinent part:
 This is a new Section, introduced as part of the 1992 UCC revisions to gain greater uniformity than was present when the statute of limitations issue was left to other local law (e.g., in Oklahoma, 12 O.S. § 95 (amended 1992)). Pre-revision Section 3–122 only specified the point at which the statute of limitations began to run; that function in current Article 3 is accomplished by the specific liability sections and the agreement. See Official Comment 1 to this Section.
 For the most part, the limitations period will be longer under Section 3–118: 6 years, rather than 5 years under 12 O.S. § 95 (First) (1992). See 12 O.S. § 92 (1910). . . .

3. Title 12 O.S.2001 § 101 provides:
 In any case founded on contract, when any part of the principal or interest shall have been paid, or an acknowledgment of an existing liability, debt or claim, or any promise to pay the same shall have been made, an action may be brought in such case within the period prescribed for the same, after such payment, acknowledgment or promise; but such acknowledgment or promise must be in writing, signed by the party to be charged thereby.

4. Title 12A O.S.2001 § 1–103 provided:
 Unless displaced by the particular provisions of this Act, the principles of law and equity, including the law merchant and the law relative to capacity to contract, principal and agent, estoppel, fraud, misrepresentation, duress, coercion, mistake, bankruptcy, or other validating or invalidating cause shall supplement its provisions.
 It was enacted in 1961 and remained unchanged until 2006. The 2006 version of the statute provides:
 a) The Uniform Commercial Code shall be liberally construed and applied to promote its underlying purposes and policies, which are:
 (1) to simplify, clarify and modernize the law governing commercial transactions;
 (2) to permit the continued expansion of commercial practices through custom, usage and agreement of the parties; and
 (3) to make uniform the law among the various jurisdictions.
 (b) Unless displaced by the particular provisions of the Uniform Commercial Code, the principles of law and equity, including the law merchant and the law relative to capacity to contract, principal and agent, estoppel, fraud, misrepresentation, duress, coercion, mistake, bankruptcy, or other validating or invalidating cause shall supplement its provisions.

note based on an open account balance with the defendant/appellee Othel Gamble, Jr., (Gamble) on January 6, 1989. The principal sum of the loan was $100,000.00, and the interest rate was 15% per annum until paid for a total of $115,000.00. The note also included a provision for attorney fees not in excess of 15% of the unpaid debt after default. The loan was for one year, and it was secured by 300 acres of spring spinach and the 1989 soybean crops.

¶4 **The parties have stipulated that Gamble made sporadic payments on the note on the following dates, in the following amounts:**

| | | | |
|---|---|---|---|
| 2/1/1990 | $20,000.00 | 5/10/2000 | $2,000.00 |
| 3/05/1991 | $20,000.00 | 6/12/2000 | $2,000.00 |
| 10/18/1996 | $25,000.00 | 7/5/2000 | $2,000.00 |
| 5/11/1999 | $ 2,000.00 | 8/25/2000 | $2,000.00 |
| 6/10/1999 | $ 2,000.00 | 10/10/2000 | $2,000.00 |
| 7/7/1999 | $ 2,000.00 | 11/22/2000 | $2,000.00 |
| 8/24/1999 | $ 2,000.00 | 3/29/2001 | $2,000.00 |
| 4/11/2000 | $ 2,000.00 | 5/22/2001 | $2,000.00 |
| | | 6/13/2001 | $2,000.00[5] |

¶5 On September 28, 2001, three months after the last payment, Keota filed a lawsuit alleging that Gamble had defaulted on the note. Gamble responded with an answer and counter-claim, arguing, alternatively, that: 1) the payments did not toll the applicable statute of limitations; 2) if the limitations period had been tolled, there was an oral novation; and 3) in the absence of a novation, Keota, instead, owed Gamble.

¶6 On October 3, 2005, the parties stipulated that the threshold legal issue in this matter was which statute of limitations controlled—the five years under 12 O.S.1981 § 95,[6] which was in effect when the note was executed, or the six years under 12A O.S. Supp.1992 § 3–118(a), which did not become effective until January 1, 1992.[7]

¶7 The trial court held a hearing on November 17, 2005. It issued an order on January 6, 2006, determining that the action was time-barred by 12 O.S.1981 § 95.[8] Keota appealed on March 14, 2006, and the cause was assigned to this office on September 21, 2009.

### ¶8 THE PAYMENTS MADE ON THE NOTE EXTENDED THE LIMITATIONS PERIOD.

 ¶9 The parties have stipulated to the facts and issues in an apparent attempt to narrow the question before the Court. However, they also stipulated that the debtor continued to make payments on the note from 1999 until 2001. The clear implication of this stipulation is that such payments were voluntary and were to apply to the balance due on the note. We construe a petition in error in its entirety,[9] and we cannot ignore applicable, controlling law.[10] Rules of plead-

---

5. Trial transcript of September 15, 2005, and accompanying exhibits 1–8 which were stipulated. Of particular interest is p. 13–14. The dissent would address only one issue—that which the parties themselves submitted to the trial court in an agreed statement of facts: whether the statutory period of limitations applicable to the claim is that of five years (12 O.S.1981 § 95) or that of six years (12 O.S. Supp.1992 § 3–118(a)). These time bars are procedural and can be tolled, even after their expiration, by restarting the statutory period's running upon the obligor's each voluntary payment of the obligation. 12 O.S.2001 § 101. Procedural time bars may be arrested, suspended, interrupted and erased. *Reynolds v. Porter*, 1988 OK 88, ¶¶ 13–21, 760 P.2d 816, 821–24; *Stephens v. Household Finance Corp.*, 1977 OK 137, ¶¶ 15–16, 566 P.2d 1163; *Hiskett v. Wells*, 1959 OK 273, ¶ 0, syl.1, ¶¶ 11–15, 351 P.2d 300, 304. Black's Law Dictionary (7th ed.1999) at page 1495 defines a tolling statute as one that "interrupts the running of a statute of limitations...." A contrary view of tolling was urged before the trial court by argument that no obligor's part payment would operate to breathe new life into a claim that stood

expired. [Hearing on November 17, 2005, Tr. at p. 24.].

6. Title 12 O.S.1981 § 95 see note 1, supra

7. Title 12A O.S. Supp.1992 § 3–118(a), see note 2, supra.

8. Title 12 O.S.1981 § 95, see note 1, supra.

9. *Gray v. Holman*, 1995 OK 118, ¶ 10, 909 P.2d 776.

10. Title 12 O.S.2001 § 2201 provides:
 A. Judicial notice shall be taken by the court of the common law, constitutions and public statutes in force in every state, territory and jurisdiction of the United States.
 B. Judicial notice may be taken by the court of:
 1. Private acts and resolutions of the Congress of the United States and of the Legislature of this state, and duly enacted ordinances and duly published regulations of governmental subdivisions or agencies of this state or the United States; and

ing both at trial and at appellate levels have been liberalized to allow the court to focus attention on the substantive merits of the dispute rather than upon procedural niceties.[11] Certainly, whether the continuation of payments serves to toll or revive the statute of limitations is within the merits of the dispute and the issues raised and argued on appeal regardless of the parties' attempt at narrowing the issue by stipulation.

¶ 10 Since 1910, the general rule of law is that voluntary, partial payments made on a contractual debt extends or revives the statute of limitations. Title 12 O.S.2001 § 101, which was enacted in 1910 and has remained unchanged since, provides:

> In any case founded on contract, when any part of the principal or interest shall have been paid, or an acknowledgment of an existing liability, debt or claim, or any promise to pay the same shall have been made, an action may be brought in such case within the period prescribed for the same, after such payment, acknowledgment or promise; but such acknowledgment or promise must be in writing, signed by the party to be charged thereby.

¶ 11 Section 101 was borrowed from the 1889 statutes of the State of Kansas. The Kansas Supreme Court in *Good v. Ehrlich*, 67 Kan. 94, 72 P. 545, 546 (1903) addressed its version of the statute by acknowledging that pursuant to the common law and the statute, partial payment tolled the limitations period because it was an acknowledgment of an existing liability at the time the payment was made.[12]

¶ 12 This Court, in *Berry v. Oklahoma State Bank*, 1915 OK 590, 50 Okla. 484, 151 P. 210, applied the Kansas Court's rationale when it reviewed an action brought on behalf of a bank to recover on a defaulted note. The debtor alleged that the statute of limitations had expired, claiming the note was due more than five years prior to the filing of the suit. The bank had alleged that interest payments had been paid by the debtor, thereby tolling the statute of limitations. Although the Court did not specifically address the language of § 101, it did rely on the *Good* Kansas case which had recognized that a partial payment, if made as part of the obligation by the debtor or someone at the debtor's direction, and under such circumstances amounted to an acknowledgment of an existing liability, extended or tolled the limitation period.[13]

---

2. The laws of foreign countries.
C. The determination by judicial notice of the applicability and the tenor of any matter of common law, constitutional law or of any statute, private act, resolution, ordinance or regulation shall be a matter for the judge and not for the jury.

11. *Whitehorse v. Johnson*, 2007 OK 11, ¶ 7 fn. 6, 156 P.3d 41; *Davis v. GHS Health Maintenance Org., Inc.*, 2001 OK 3, ¶ 25 fn. 35, 22 P.3d 1204; *Markwell v. Whinery's Real Estate, Inc.*, 1994 OK 24, ¶ 6, 869 P.2d 840.

12. *Good v. Ehrlich*, 67 Kan. 94, 72 P. 545, 546 (1903) stated:

> ... In *U.S. v. Wilder*, 13 Wall. 254, 20 L.Ed. 681 [(1871)], the same point was ruled as follows (page 256, 13 Wall., 20 L.Ed. 681): "The principle on which part payment takes a case out of the statute is that the party paying intended by it to acknowledge and admit the greater debt to be due. If it was not in the mind of the debtor to do this, then the statute, having begun to run, will not be stopped by reason of such payment." The same principle is announced in *Arnold v. Downing*, 11 Barb. 554, and *Butler v. Price*, 110 Mass. 97. See, also, 33 Cent. Dig. § 632. Wood on Limitations (3d Ed.) § 97, lays down the rule in the following language: "In order to make a money payment a part payment within the statute, it must be shown to be a payment of a portion of an admitted debt, and paid to and accepted by the creditor as such, accompanied by circumstances amounting to an absolute and unqualified acknowledgment of more being due, from which a promise may be inferred to pay the remainder. * * * Payment * * * must be made under such circumstances as warrant a jury in finding an implied promise to pay the balance, and, if the payment was made under such circumstances as to rebut any such promise, it does not affect the operation of the statute." In section 101 it is further stated that such payment "must have been made by the debtor in person, or by some one authorized by him, to make a new promise on his behalf. And payment made by a third person, without authority from the debtor to make it, cannot remove the statute bar, because it does not imply any acknowledgment of the debt by the debtor." ...

13. Title 12 O.S.2001 § 101, see note 3, supra, originated from the Kansas statutes of 1889.

¶ 13 Since 1915, this Court has had numerous opportunities to discuss and apply this statutorily codified, common law rule. In 1918, the Court recognized in *Ross v. Lee*, 1918 OK 222, ¶ 3, 68 Okla. 125, 172 P. 444, a case involving a promissory mortgage note, that it was well settled that when credit is made with the consent of and by agreement with the debtor, it will constitute payment and interrupt the statute of limitations. In *Eichman v. Culver*, 1934 OK 526, ¶ 11, 169 Okla. 495, 37 P.2d 640, the Court in an action on a promissory note held that partial payment by the debtor, in order to toll the statute of limitations must be voluntary, and made by the debtor or someone authorized on the debtor's behalf. The Court noted that the reason for this rule was because the partial payment constituted an acknowledgment of the existing debt.

¶ 14 In *First State Bank of Loco v. Lucas*, 1934 OK 340, ¶ 8, 168 Okla. 406, 33 P.2d 622, the Court held that in order for a partial payment to revive a debt barred by the statute of limitations, it must be made under circumstances warranting a clear inference that the debtor recognized the debt as an existing liability and indicating a willingness or at least an obligation to pay towards the balance. In other words, where the circumstances and events surrounding the partial payment clearly infer that the payment made was voluntary and intended to be made on the indebtedness, the limitation period is extended or revived.[14]

¶ 15 This partial payment rule has also been recognized in other states as well. In *Johnson v. Johnson*, 81 Mo. 331 (1884), the Supreme Court of Missouri, addressing the limitation period on a suit brought to foreclose a mortgage recognized that: 1) the running of the statute of limitations is suspended and its bar overcome by evidence of partial payment; and 2) partial payment on a note, after the bar of the statute has become complete will revive the cause of action upon it. Similarly, in *Wadley v. Ward*, 99 Ark. 212, 137 S.W. 808, 809 (1911), the Supreme Court of Arkansas, when addressing the limitations period on a defaulted mortgage stated:

> It is well settled that, as against the debtor, partial payments made by him to his creditor will stop the running of the statute of limitations, and mark the time from which the statute then begins to run; and the general rule is that the partial payment of a debt, which will prevent the statute of limitations from running against it, will also prevent the statute from running against the remedy on the security . . . .[15]

¶ 16 We have also recognized the partial payment rule as applied to payments made on open accounts. *Pitts v. Walker*, 1940 OK 387, ¶ 13, 188 Okla. 17, 105 P.2d 760, involved an open account extending over a period of eight or nine years. The last payment was made within three years prior to the commencement of the action. The Court recognized that by the weight of authority, the statute commences to run on each item of an open running account at the time of the entry thereof. The same rationale has been applied to other open accounts,[16] payments continued on advancements on a contract for royalty interest,[17] and payments made on rental agreements.[18]

14. *See also, Hoskins v. Stevens*, 1947 OK 311, ¶ 8, 199 Okla. 297, 185 P.2d 911, noting that "Section 101 is more than a tolling statute. It starts the statutory period to running anew." The partial payment rule has also been recognized and upheld in *Street v. Moore*, 1935 OK 583, ¶¶ 11–14, 172 Okla. 336, 45 P.2d 73 (promissory note); *James v. Wingate*, 1937 OK 127, ¶ 11, 179 Okla. 224, 65 P.2d 452 (mortgage loan); *Thomas v. Puett*, 1936 OK 335, ¶ 10, 177 Okla. 140, 57 P.2d 877 (action on promissory note barred where no partial payments had been made after limitation period expired). *See also, Abboud v. Abboud*, 2000 OK CIV APP 116, 14 P.3d 569 (summary judgment was precluded because genuine issues of material fact existed as to whether, pursuant to § 101, the debtor made partial payments of the debt, so as to extend the statute of limitations).

15. *See also, Hewlett v. Schenck*, 82 N.C. 234 (1880); *Kaiser v. Idleman*, 57 Or. 224, 108 P. 193 (1910).

16. *Drakos v. Edwards*, 1963 OK 191, ¶ 11, 385 P.2d 459.

17. *McLaughlin v. Laffoon Oil Co.*, 1968 OK 69, ¶ 28, 446 P.2d 603.

18. *Harvey v. Frizzell*, 1950 OK 190, ¶ 0, 203 Okla. 424, 222 P.2d 752.

¶ 17 The parties reliance on only 12 O.S.1981 § 95,[19] or 12A O.S. Supp.1992 § 3–118(a),[20] fails to take into consideration 12 O.S.2001 § 101, which provides that partial payment extends or revives the statute of limitations and 12A O.S.2001 § 1–103,[21] which states that the general statutes and case law of the state shall supplement the UCC. Although we have not discussed the statutory trifecta of 12 O.S.1981 § 95,[22] 12A O.S. Supp.1992 § 3–118(a),[23] and 12 O.S.2001 § 101, the Court of Civil Appeals has previously recognized that § 101 applies to the UCC and, because § 103 provides for general statutes to supplement the UCC, we agree.[24]

¶ 18 The partial payment rule, that a voluntary partial payment on a note tolls or revives the statute of limitations, has been applied for centuries.[25] The stipulated facts show that even if the action lapsed, regardless of whether it lapsed under a five year period or a six year period, it was revived in 1999, and every year thereafter by the debtor's payments towards the debt.[26] Accordingly, we hold that the lawsuit is not time-barred because the payments made on the note for the years 1999 through 2001, which were intended to apply to the balance, extended the limitations period. The action, brought within three months of the last payment in 2001, was timely, regardless of whether the controlling statute of limitations was five years under 12 O.S.1981 § 95,[27] or six years under 12A O.S. Supp.1992 § 3–118(a).[28] Because we reverse the trial court's ruling regarding the timeliness of the action, we also reverse the trial court's award of attorney fees to the defendant, Gamble. Consequently, we need not review the reasonableness of the trial court's enhancement bonus.

19. Title 12 O.S.1981 § 95, see note 1, supra.

20. Title 12A O.S. Supp.1992 § 3–118(a) see note 2, supra.

21. Title 12A O.S.2001 § 1–103, see note 4, supra.

22. Title 12 O.S.1981 § 95, see note 1, supra.

23. Title 12A O.S. Supp.1992 § 3–118(a) see note 2, supra.

24. In *Central National Bank & Trust Co. v. Stettnisch*, 1987 OK CIV APP 9, 821 P.2d 1066, the Court of Civil Appeals addressed the limitation period on a promissory note wherein partial payments had been made, the action was not brought within five years of the note, but it was brought within five years of the last partial payment. The Court, addressing the limitation period prescribed by the UCC at the time, stated in ¶¶ 6–8 that:

 Under 12 O.S. § 95 a civil cause of action upon a written contract, agreement or promise must be brought within five (5) years after the cause of action shall have accrued. Under 12A O.S.1981 § 3–122(1)(b) a cause of action accrues against a maker of a demand instrument upon its date, or, if no date is stated, on the date of issue. Applying only these two statutes to the fact that the demand note was executed on August 25, 1980 and suit was filed on December 13, 1985, one could easily conclude that the claim was barred. However, reliance only on the two above statutory sections fails to take into consideration 12 O.S.1981 § 101 which provides, in effect, that partial payment extends the time within which to bring an action in any case founded on contract, and

 12A O.S.1981 § 1–103 which provides that the general statutes and case law of the state shall supplement the Uniform Commercial Code. There is no question that partial payment on an open account either tolls or revives the statute of limitations. *Drakos v. Edwards*, 385 P.2d 459 (Okl.1963). *See also, McLaughlin v. Laffoon Oil Company*, 446 P.2d 603 (Okl.1968). The principle or theory on which part payment removes the bar of the statute is that the payment is an acknowledgment or admission of the existence of the indebtedness which raises an implied promise to pay the balance, or that the payment, by its own vigor, revives the debt, no matter how old the debt may be. The efficacy of a payment to avert the effect of the statute resides in the conscious and voluntary act of the debtor, and may be qualified and limited as a new promise may be. 54 C.J.S. § 321. This was and still is the law in Oklahoma.

25. According to the Restatement 2d of Contracts 5 ST NT (1981), nearly two-thirds of the jurisdictions in the United States have provisions substantially similar to Oklahoma's 12 O.S.2001 § 101, see note 3, supra and they all originated from Lord Tenterden's Act, 9 Geo. IV, c. 14 also known as the Statute of Frauds Amendment Act which was enacted in England in 1828.

26. Title 12 O.S.2001 § 101, see note 3, supra.

27. Title 12 O.S.1981 § 95, see note 1, supra.

28. Title 12A O.S. Supp.1992 § 3–118(a) see note 2, supra.

## CONCLUSION

██ ¶ 19 When an issue or claim is properly before the court, the court is not limited to the particular legal theories advanced by the parties, but rather retains the independent power to identify and apply the proper construction of the governing law.[29] As the Court noted in the syllabus[30] of *First Nat. Bank of Cordell v. City Guaranty Bank of Hobart et. al.,* 1935 OK 1105, ¶ 0, 174 Okla. 545, 51 P.2d 573:

> "A stipulation between the parties or their counsel cannot control the action of the court in a matter of law, although they may stipulate respecting facts." [31]

Under the stipulated facts, the debtor continued to make partial payments, albeit sporadically, on a note executed in 1989 for twelve years. The effect of such payments extended or revived any limitation period which would have expired had no payments additional payments been made. It would be illogical and incongruous to foreclose a creditor from bringing an action because payments were made, then stopped, then reinstated for an extended period of time only to lull the creditor into thinking that the debt might eventually be paid without the creditor being forced to resort to legal action. The trial court is reversed, and the cause is remanded for proceedings consistent with this opinion.

**TRIAL COURT REVERSED; CAUSE REMANDED FOR PROCEEDINGS CONSISTENT WITH OUR PRONOUNCEMENT.**

TAYLOR, V.C.J., HARGRAVE, OPALA, KAUGER, WINCHESTER, REIF, JJ., concur.

EDMONDSON, C.J., WATT, COLBERT, JJ., dissent.

OPALA, J., with whom TAYLOR, V.C.J. and KAUGER, J., join, concurring.

¶ 1 I write separately from the court to explain why its pronouncement in which I concur does not offend or intrude upon the common law's traditional respect for the role of counsel in the adversarial forensic practice, trial and appellate.

¶ 2 Just as the law which is to govern first-instance proceedings is shaped exclusively by the trial judge who defines its state through pretrial rulings and those offered from the bench as well as through the instructions for the guidance of the jury,[1] so also the issues for the appellate pronouncement of the law are not formulated exclusively by the briefs of counsel but by the reviewing tribunal's careful analysis of the record in light of the applicable law.[2]

29. *Kamen v. Kemper Fin. Servs., Inc.,* 500 U.S. 90, 99, 111 S.Ct. 1711, 114 L.Ed.2d 152 (1991).

30. When this Court used "syllabus," the syllabus contained the law of the case and the body of the opinion was merely dictum. *Robinson v. Oklahoma Nephrology Associates, Inc.,* 2007 OK 2, ¶ 13, fn. 2, 154 P.3d 1250; *Corbin v. Wilkinson,* 1935 OK 977 ¶ 0, 175 Okla. 247, 52 P.2d 45. The reasoning of the court in the body of the decision was an aid to the interpretation of the law expressed in the syllabus. *Robinson,* supra.

31. Though parties can stipulate to certain facts, parties cannot stipulate to conclusions of law or the legal effect of stipulated facts. *Longhorn Partners Pipeline, L.P. v. KM Liquids Terminals, LLC,* 408 B.R. 90, 95 (Bkrtcy.S.D.Tex.2009). *See also Saviano v. Commissioner of Internal Revenue,* 765 F.2d 643, 645 (7th Cir.1985); *Rush v. Aroostook County,* 447 A.2d 478, 479 (Me.1982); *Hussey v. Campbell,* 189 F.Supp. 54, 57–58 (S.D.Ga.1960). Parties cannot stipulate as to the law applicable to a given set of facts and bind the court. *Word v. Motorola, Inc.,* 135 Ariz. 517, 662 P.2d 1024, 1027 (1983).

1. It is the function of nisi prius courts to make first-instance determinations of fact or legal questions. *Broadway Clinic v. Liberty Mut. Ins. Co.,* 2006 OK 29, ¶ 26, 139 P.3d 873, 880; *Davis v. Gwaltney,* 1955 OK 362, ¶ 13, 291 P.2d 820, 824. A trial court has the duty, on its own motion, to instruct the jury properly as to all of the fundamental issues of the case as supported by the pleadings and evidence. *Young v. First State Bank,* 1981 OK 53, ¶ 19, 628 P.2d 707, 712; *Bradley Chevrolet, Inc. v. Goodson,* 1969 OK 25, ¶ 17, 450 P.2d 500, 503.

2. Issues of law are the province of courts, not of parties to a lawsuit. As the Court noted in *Estate of Sanford v. Commissioner,* 308 U.S. 39, 60 S.Ct. 51, 59, 84 L.Ed. 20 (1939): "We are not bound to accept as controlling, stipulations as to questions of law." *Cf. United States v. John J. Felin & Co.,* 334 U.S. 624, 640, 68 S.Ct. 1238, 1246, 92 L.Ed. 1614 (1948) ("[e]ven where the parties to the litigation have stipulated as to the 'facts,' this Court will disregard the stipulation, accepted and applied by the courts below, if the stipulation obviously forecloses real questions of law").

¶ 3 No stipulation by counsel of legal issues for trial or on appeal may prevail over the judiciary's exclusive power to formulate in and apply to a controversy the law that governs its disposition based on the record brought before the tribunal.[3] This and no other principle controls the correct division of forensic responsibility between the court and counsel for the parties in the adversarial regime of the common-law system.

¶ 4 In the allocation of functions for the proper operation of the adversarial forensic regime of the common law counsel for the parties **bear the responsibility to propose** the law that is to govern the controversy.[4] The court **settles the law** that will be applied. An agreement between (or among) counsel as to the applicable law does not change the division of responsibilities. **The court is never compelled to accept the agreement reached by counsel. Its duty is unchanged and remains undiminished at all times.**[5]

¶ 5 A parties' agreement on issues of law in a case is not binding on the court when the record indicates otherwise.[6] Fidelity to the law that governs the dispute must be the court's primary and exclusive concern. The parties are always free to stipulate the facts but they may not defeat the court's exclusive control over the law by stipulating the law that is to govern their case. The **role of determining the norms of law** to govern the facts in litigation **is always assigned exclusively to the tribunal rather than to the parties' counsel.** Simply stated, when counsel agree what law should be applied but the court does not accede to their view, the judge's choice of law will prevail over that of the lawyers.[7]

---

"The effect of admitted facts is a question of law." *Nelson v. Montgomery Ward & Co.,* 312 U.S. 373, 376, 61 S.Ct. 593, 595, 85 L.Ed. 897 (1941).

3. The parties may settle a controversy and request a judgment conformable to the terms of their agreement. But they may not direct that a judgment be rendered according to their stipulation of facts or of law. The common law's adversarial forensic practice does not reduce the judiciary to a servant status. Neither a stipulation of facts nor one of law will prevail over the duty and power of the appellate judiciary to render that judgment which is dictated by the law to be applied to the record before the court. The parties press their positions but the appellate court is bound by the law and by the record before it in deciding what issue will govern the controversy and how these issues should be resolved.
See, e.g., *Swift & Co. v. Hocking Valley R. Co.,* 243 U.S. 281, 289–90, 37 S.Ct. 287, 289, 61 L.Ed. 722 (1917), where the Court held:
If the stipulation is to be treated as an agreement concerning the legal effect of admitted facts, it is obviously inoperative; since the court cannot be controlled by agreement of counsel on a subsidiary question of law ..... The duty of this court, as of every judicial tribunal, is limited to determining rights of persons or of property, which are actually controverted in the particular case before it.... No stipulation of parties or counsel, whether in the case before the court or in any other case, can enlarge the power, or affect the duty, of the court in this regard.' *California v. San Pablo & T.R. Co.* 149 U.S. 308, 314, 13 Sup.Ct. Rep. 876, 37 L.Ed. 747, 748 [(1893)]. See *Mills v. Green,* 159 U.S. 651, 654, 16 Sup.Ct. Rep. 132, 40 L.Ed. 293, 294 [(1895)].

4. According to one commentator, "[t]he jury is bound to decide the facts on the basis of legal instructions that, **while given by the judge, are initially proposed by the advocates.**" Geoffrey C. Hazard, Angelo Dondi, *Responsibilities of Judges and Advocates in Civil and Common Law: Some Lingering Misconceptions Concerning Civil Lawsuits,* 39 Cornell Int'l L.J. 59, 61 (2006) (emphasis supplied). As one commentator notes, "[i]t is still the American lawyer—not the court—that is responsible for gathering and presenting the proof. It is still the American lawyer—not the court—that is responsible for choosing the witnesses and for questioning and cross-examining them." Oscar G. Chase, Legal Processes and National Culture, 5 Cardozo Journal of International and Comparative Law 1, 6 (1997).

5. *United States v. John J. Felin & Co., supra* note 2, 334 U.S. at 640, 68 S.Ct. at 1246; *Swift & Co. v. Hocking Valley R. Co., supra* note 3, 243 U.S. at 289–90, 37 S.Ct. at 289; *California v. San Pablo & T.R. Co., supra* note 3, 149 U.S. at 314, 13 S.Ct. at 878.

6. *See, e.g., Clark v. Munroe,* 407 So.2d 1036, 1037 (Fla.App.1981). There the court held that while the parties may stipulate the use of summary judgment procedure, this does not authorize "the trial court to accept such a stipulation **where the record reveals** disputed issues of material facts. **The parties cannot by stipulation control questions of law.**" *Id.,* citing *Massachusetts Bonding & Ins. Co. v. Bryant,* 175 So.2d 88 (Fla. 1st DCA 1965), affd., 189 So.2d 614 (Fla.1966)(emphasis supplied).

7. The adversarial forensic practice of the Anglo-American law does not reduce appellate judges to the status of impotence comparable to that of

¶ 6 In sum, the court's pronouncement today remains faithful to the traditional Anglo–American notions of adversarial regime in the forensic practice by its insistence that the court must retain full control over the law that governs the appellate process of review and by not yielding to any departure based on contrary stipulation of counsel for the parties.

¶ 7 While a party's concession of harmful facts is always detrimental, no legal detriment will necessarily follow from a stipulation of improvident or inapplicable law. It is not binding on the court. **Adversarial games cannot be played with the rules of law that are due a litigant.** There lies the largely inflexible line of common-law fairness in the administration of legal process. **Absent some extraordinary conduct** by one who seeks to be relieved of the adverse consequence from conceding inapplicable law, the common law is often utterly unyielding in protecting the improvident litigant.

¶ 8 Lastly, the dissenter's verbal abuse of my concurrence must not escape mention but does not deserve an answer with detailed jurisprudential analysis. The dissent manufactures nonexisting inconsistencies to create an illusion of conflicting pronouncements authored by me in the past. Even if I were guilty of every inconsistency of which I am accused, the legal quality of this concurrence would remain unaffected. It stands on solid grounds for a pronouncement of common law's adversarial litigation verity of ancient vintage. The attack aims at the messenger's person rather than at the text of his message.[8] Expert readership of this Nation as well as in the world community of the Anglo–American legal system, I am confident, will doubtless prove more fit objectively to assess the value, if any, this contribution of mine will make to jurisprudence of the case at hand than I may do myself in today's anger

from an utterly unwarranted and unprovoked attack upon my intellectual prowess and professional integrity. Restraint born of composure will silence with calm dignity all noise generated by recklessly and irresponsibly thrown personal insults in a desperate attempt to demonstrate some strained signs of inconsistent rulings in past opinions of which I am the author.

EDMONDSON, C.J., dissenting.

¶ 1 The majority has determined this matter on an issue—tolling under 12 O.S.2001, § 101—which was not framed or argued by the parties. This 2001 action on a 1989 promissory note was submitted to the trial court by the parties as an agreed question of law on stipulated facts and we are not free to substitute our own issues for those issues which were actually presented below.

¶ 2 It is well settled that appellate courts are not free to raise issues *sua sponte* and address claims or defenses that the parties did not present in the court below. *Jordan v. Jordan*, 2006 OK 88, 151 P.3d 117, 120. Our decisions recognize that in a case such as this where the parties have submitted their case to the trial court on an agreed statement of facts, it is our duty on appeal to apply the law to those facts as a court of first instance and to direct judgment accordingly. *Rist v. Westhoma Oil Co.*, 1963 OK 126, 385 P.2d 791, 792; *Landy v. First National Bank & Trust Co. Of Tulsa*, 1962 OK 12, 368 P.2d 987, 989. A judgment based on an agreed statement of facts is a mere legal conclusion on such facts and the only question presented for review is the propriety of the judgment on the facts so agreed upon. *Anderson v. Keystone Supply Co.*, 1923 OK 410, 93 Okla. 224, 220 P. 605, 605–606.

¶ 3 In *Whitten v. Kroeger*, 183 Okla. 327, 82 P.2d 668, 671 (1938), an action brought to recover on a promissory note was submitted

---

eunuchs in the sultan's harem. When a parties' stipulation attempts to reduce judicial review of a case to a single question which, if answered, would not fully dispose of the case, the appellate court does not violate any rule of common-law adversarial system by extending its consideration beyond the frame of the stipulation to reach other issues necessary for a legally correct disposition of the case.

8. Interpersonal wars conducted in courts composed of multiple judges sitting in the same case, which inevitably move the focus of a legal controversy from its subject-matter to the personality traits of each combatant judge, tend to becloud and distort the issues under the court's consideration by injecting extraneous impurities into the decisional process.

to the trial court upon an agreed statement of facts and we rejected the defendants' attempt to raise for the first time on appeal the defense of a statute of limitations which they had not raised by the agreed statement of facts. Another limitations statute had been raised below, but it was held inapplicable and not subject to review. Based on previous decisions, this Court found that where a case is submitted on an agreed statement of facts, that agreed statement supersedes the pleadings and the only question which may be considered is whether such facts require judgment for plaintiff as a matter of law. *McGrath v. Rorem,* 123 Okla. 163, 252 P. 418, 419–420 (1926), followed the general rule that where facts are submitted to the court by agreement, it is necessary only for the court to apply the law to those facts; further, that only questions of law are raised for review on appeal. The Court concluded that such an agreement has the effect of waiving any error in the action of the court in its rulings on the pleadings. See also *Goodwin v. Kraft,* 23 Okla. 329, 101 P. 856, 859 (1909).

¶ 4 The parties before us agreed to their statement of facts and submitted to the trial court the legal issue of which statute of limitations applied to the action on the subject promissory note: was it five years under 12 O.S.1981 § 95, which was in effect when the note was executed, or six years under 12A O.S. Supp.1992 § 3–118(a), which was enacted after the note was executed. The parties stipulated that the time period which was the focus of concern was March 5, 1991 to October 18, 1996, during which time defendant made no payments on the note. The parties agreed that if the five year general

statute applied, plaintiff's cause of action would be time barred because defendant's October 18, 1996 payment was beyond five years from the March 5, 1991 payment. Conversely, if the six year limitation of 12A O.S. Supp.1992 § 3–118(a) should apply **and** be given retroactive application, the matter would proceed to trial on the merits as a result of defendant's October 18, 1996 payment, which was within the 6 year period from the prior March 5, 1991 payment, creating another 6 year period and making the September 28, 2001 filing of suit timely. Which limitations statute applied is the question the parties framed and submitted to the trial court and then to us. The trial court found that 12A O.S. Supp.1992 § 3–118(a) could not be applied retroactively and that the statute of limitations applicable to the action was five years under 12 O.S. 95. The trial court accordingly dismissed Plaintiff's suit as time-barred as it was filed fewer than six years but more than five years after the 1996 payment, as agreed upon by the parties. In this appeal from an agreed question it is our duty to apply the law to the question submitted by the parties and answered by the trial court.

¶ 5 I believe the trial court's ruling that 12A O.S. Supp.1992 3–118(a) could not be applied retroactively was correct and I would affirm its judgment in favor of defendant.

WATT, J. dissenting.

¶ 1 The majority opinion not only calls into question, but essentially destroys, over ninety-five years of precedent laid down by this Court.[1] After publication of the majority's

1. *State ex rel. State Ins. Fund v. JOA, Inc.,* 2003 OK 82, ¶ 6, 78 P.3d 534 [Stipulations governing applicability of statute bound the parties.]; *State ex rel. Dept. of Human Servs. v. Baggett,* 1999 OK 68, ¶ 21 n. 13, 990 P.2d 235 [Stipulations admitting or agreeing to certain facts for the purpose of trial are binding and conclusive on the parties during the progress of the trial and on appeal.] [Kauger, J. concurring]; *Bonner v. Oklahoma Rock Corp.,* 1993 OK 131, ¶ 5 n. 15, 863 P.2d 1176 [Stipulations are solemn admissions and are binding upon the parties and the court.]; *Strelecki v. Oklahoma Tax Comm'n,* 1993 OK 122, ¶ 17, 872 P.2d 910 [Tax Commission held to stipulations and would not be relieved of legal position inconsistent with that maintained before the trial tribunal.]; *State ex rel. Trimble v. City of*

*Moore,* 1991 OK 97, ¶ 13 n. 14, 818 P.2d 889 [Stipulations filed in case are solemn admissions and binding and conclusive on the court.] [Opinion by Kauger, J.]; *Maule v. Independent School Dist. No. 9,* 1985 OK 110, ¶ 7, 714 P.2d 198 [Stipulation defining bargaining unit binding.] [Opinion by Kauger, J.]; *Nanonka v. Hoskins,* 1982 OK 53, ¶ 15, 645 P.2d 507 [Stipulation admitting or agreeing to certain facts for the purpose of trial is binding and conclusive on the parties during trial and appeal.]; *Frank v. National Printing & Office Supply Co.,* 1959 OK 108, ¶ 16, 343 P.2d 1085 [Even irregularly entered stipulations are binding on the parties and on appeal.]; *Elliott v. Hunt,* 1946 OK 233, ¶ 0, 197 Okla. 464, 172 P.2d 804 [Agreed stipulation on description of property would bind party on ap-

pronouncement, the practice of utilizing "trial stipulations" as we have known it and its effectiveness in streamlining the trial process will be forever lost. The opinion's change of the rules regarding trial preparation: blind sides the appellee/defendant, Othel Gambel, Jr. (Gamble), without any opportunity for a response to an issue first considered *sua sponte* on appeal; robs Gamble of the trial court's discretionary award of a lodestar and bonus fee where no abuse of discretion in allowing either award exists;[2] causes an unnecessary waste of judicial resources by creating a situation where the trial court must hear the testimony of witnesses in a situation where it was obvious previously that no such testimony was required;[3] and surprises the appellant/plaintiff, Keota Mills & Elevator (Keota), with a late Christmas present, tied up in ribbon and bows created out of whole cloth by the majority through the changing of all the rules and by declaring it the winner on grounds neither party thought were relevant or even part of the rule book.

¶ 2 The concurring opinion lends no credence to the majority position. Rather, it is a blatant demonstration of the lengths to which the majority will go to reach a result in an individual cause without giving any fidelity or allegiance to the importance of stipulation law as it has developed in Oklahoma over the last century.

¶ 3 Most certainly, if the majority prevails, the only appropriate manner in which to handle this cause is to make it prospective to this cause and in all others which may be in the appellate pipeline.[4] Otherwise, this Court has, through judicial fiat, set a snare for unsuspecting litigants, lawyers, and trial courts who were well versed in stipulation law as it stood throughout this litigation and by which they understood themselves to be governed. Failure to apply the majority opinion prospectively deprives those who have relied on this Court's pronouncements of due process protections.[5]

¶ 4 My allegiance to precedent carefully and thoughtfully crafted by this Court over almost a century and my oath of office prevent me from participating in a decision

peal.]; *Evans v. Raper*, 1939 OK 271, ¶ 0, 185 Okla. 426, 93 P.2d 754 [Litigants may stipulate concerning their respective rights and are bound thereby.]; *Callaway v. Sparks*, 1939 OK 180, ¶ 0, 184 Okla. 569, 89 P.2d 275 [Stipulation made in open court is binding and conclusive during trial and on appeal.]; *Yamie v. Willmott*, 1939 OK 130, ¶ 0, 184 Okla. 382, 88 P.2d 325 [Stipulations made in open court are binding and conclusive on parties during trial and on appeal.]; *Bruner v. Burch*, 1937 OK 63, ¶ 3, 179 Okla. 338, 65 P.2d 1215 [Stipulating that cause involved only one issue precluded consideration of issue of when limitations would run.]; *Ray v. Ridpath*, 1930 OK 413, ¶ 12, 145 Okla. 69, 291 P. 546 [Stipulation is a pleading which binds the party.]; *First Nat'l Bank of Oklahoma City v. Foster*, 1924 OK 1054, ¶ 3, 106 Okla. 240, 233 P. 762 [Bank held to stipulations on settlement of indebtedness.]; *Skien v. Junction Oil & Gas Co.*, 1920 OK 365, ¶ 9, 80 Okla. 41, 193 P. 988 [Where a party admits or stipulates to certain facts, the court cannot indulge in inferences for the purpose of avoiding the binding effect of the admission or stipulation.]; *Loman v. Paullin*, 1915 OK 661, ¶ 0, 51 Okla. 294, 152 P. 73 [Stipulations are the equivalent of judicial admissions.]; *Reeves Realty Co. v. Brown*, 1915 OK 126, ¶ 4, 45 Okla. 737, 147 P. 318 [Parties by stipulations make the law for any legal proceedings to which they are parties, which not only bind them, but which the courts are bound to enforce.].

2. A trial court's attorney fee award is reviewed for an abuse of discretion. An abuse of discre-

tion occurs when a decision is based on an erroneous conclusion of law or where there is no rational basis in evidence for the ruling. *Spencer v. Oklahoma Gas & Elec. Co.*, 2007 OK 76, ¶ 13, 171 P.3d 890.

3. Transcript of Hearing on Defendant's Application for Attorney Fee and Bonus Award, held on April 27, 2006, and providing in pertinent part at p. 35:

"... THE COURT: The case was set for nonjury trial and then the parties entered into lengthy written stipulations and then presented their oral argument, because after stipulating to the facts, there was no call for witnesses...."

4. *Gomes v. Hameed, M.D.*, 2008 OK 3, 184 P.3d 479, in which **Justice Opala's dissent** takes issue with the majority's having declared and given retrospective effect to a new rule of Oklahoma common law thus depriving the parties of due process. The exact action the Court takes in the instant cause.

5. *McDaneld v. Lynn Hickey Dodge, Inc.*, 1999 OK 30, 979 P.2d 252, in which **Justice Opala authored the opinion** giving prospective application to the cause in order to avoid an unpatently unfair result, as well as one which would be offensive to due process standards, by "changing the rules" after the cause was finally determined.

which will have unwarranted legal ramifications and place this Court in the position of a "Supreme Trial Panel." Therefore, I dissent. The only way to keep from completely disrupting this cause and any other currently pending is to give absolute prospective application to the majority's surprising defection from well-settled stipulation law.[6]

## STIPULATED FACTS

¶ 5 **The only applicable facts in the instant cause are those to which the parties stipulated in a hearing scheduled before the trial court on September 12, 2005.** On the record, the parties **agreed** that whether the cause should proceed would be governed by a single issue: whether the five-year or the six-year statute of limitations should ap-

ply.[7] If as Gamble contended and the five-year statute of limitations governed the cause, the collection effort would be barred. Conversely, if Keota was successful in its attempt to apply the six-year statute of limitations, the cause would proceed for a determination of the balance due on the note along with associated issues.[8]

¶ 6 When argued to the trial court on November 17, 2005, the parties presented the statute of limitations as the "crux" of the issue.[9] In preparing its order, filed on January 12, 2006, the trial court recognized that the cause was to be governed by the parties' binding stipulations and that the first step in the adjudication would be to determine the applicable statute of limitations period.[10] In

---

**6.** *McDaneld v. Lynn Hickey Dodge, Inc.,* see note 5, supra.

**7.** Transcript of Scheduling Hearing Regarding Briefing and Oral Argument of the Parties, September 12, 2005, providing in pertinent part at pp. 5–6:

"... MR. MERRITT: Your Honor, if I might. We have—I guess this case turns on as Dougal said, whether or not a five or six-year statute of limitations is applicable in this case. If the Court were to rule that a six-year statute is applicable, we would proceed.... However, if the Court were to rule that a five-year statute is applicable, we would just want that—the order to be a final order or a journal entry would be our request.

MR. SANDERS: ... What we are getting into, Judge, is that if you rule it's a five-year for the defendant, that ruling is going to mean that suit on the promissory note is time-barred ..."

**8.** Transcript of Scheduling Hearing Regarding Briefing and Oral Argument of the Parties, September 12, 2005, providing in pertinent part at pp. 10–11:

"... THE COURT: So, for the purposes of today's argument, the both of you stipulate that a $20,000 payment was made on or about February 1st, 1990 and that an approximate sum of $3972.60 was applied to the principal and $16,927.40 was applied to the interest and Mr. Sanders stipulated that if the six-year statute of limitations were to be the finding of the Court, that these figures will not be carved in stone as to the balance due at trial on the issue of the balance due.

MR. SANDERS: Exactly.

THE COURT: Is that the stipulation of both parties?

MR. MERRITT: Yes, Your Honor....

MR. SANDERS: Yes, that's it exactly...."

**9.** Transcript of Oral Argument to the Court, November 17, 2005, providing in pertinent part:

at p. 5 "... MR. SANDERS: ... As stipulated, the promissory note at issue was executed on 1–6 of '89. At that point in time Title 12A, OS 3–118 did not address the statute of limitations and only spoke as to when it commenced to run. It did not provide a prescriptive period. The law in effect when this promissory note was executed on 1–6–89 is the law advanced by plaintiff [sic] at Title 12A–Title 12, Section 95 A. –1, that being a five-year statute of limitations period. The parties have stipulated that this is the crux of the issue due to a time period that exists from March 5th of 1991 when, when a $20,000 payment was paid, no payments occurring again until 10–18 of 1996 when a $25,000 payment was made. Within that time period you are in excess of five years but less than six, and that's what brings us before the Court today...."

at pp. 19–20 "... MR. MERRITT: ... Your Honor, as plaintiff—I'm sorry. As defendant's counsel has previously said, the main issue that we are asking the Court to rule upon today is whether or not the six-year statute of limitations in Title 12A, Section 3–118A governs which provides for a six-year limitations period or alternatively whether 12 OS 95 governs which is the general contract statute and that statute, Your Honor, is the five-year statute of limitations. In this case in the present matter, more than five but less than six years passed between the March 5th, 1991 $20,000 payment that had been made and the October 18, 1996 $25,000 payment that they then made...."

**10.** Order of the trial court filed on January 12, 2006, appearing at p. 110 of the record on appeal and providing in pertinent part:

"... 1. The Parties herein have agreed that the first step in this case is adjudication of the applicable statute of limitation period...."

ruling that the cause was governed by the five-year limitations period, the trial court again recognized the stipulations and agreement of the parties.[11]

### THE MAJORITY'S UNWARRANTED INTERVENTION

¶ 7 In *Maule v. Independent School Dist. No. 9 of Tulsa County*, 1985 OK 110, ¶ 7, 714 P.2d 198, we held the union and the employer to stipulations entered defining the bargaining unit on grounds that parties to a contract are bound by the stipulated terms thereof. In *White v. Amoco Prod. Co.*, 1985 OK 55, ¶ 8, 704 P.2d 470, *Niemeyer v. United States Fidelity & Guaranty Co.*, 1990 OK 32, ¶ 12, 789 P.2d 1318, and *Mehdipour v. State ex rel. Dept. of Corrections*, 2004 OK 19, ¶ 5 n. 9, 90 P.3d 546, not only did this Court not *sua sponte* raise issues not presented to the trial court on appeal, but also we refused to allow the parties to engage in the activity. In *Westinghouse Elec. Corp. v. Grand River Dam Auth.*, 1986 OK 20, ¶ 17 n. 11, 720 P.2d 713 and *Tulsa County Budget Bd. v. Tulsa County Excise Bd.*, 2003 OK 103, ¶ 18 n. 31, 81 P.3d 662, we refused to issue advisory opinions. Furthermore, in *Tulsa County*, the Court acknowledged that it was bound by the record presented for review. **Inexplicably, the author of each of the above cited cases is the same Justice authoring the majority opinion here.**

¶ 8 Here, the majority ignores the teachings of all these causes. It throws out stipulations that the parties and the trial court agreed were determinative of the issue to be decided. The majority decides the cause on an issue which was never presented to the trial court and which it raises *sua sponte*. Finally, it issues an advisory opinion on an issue which can be found nowhere in the record presented either to the trial court or on appeal. The practical result of adopting the majority opinion is to overrule all the cases cited in ¶ 5 to the extent that they conflict with today's pronouncement.

### THE MAJORITY SIMPLY "MISSES THE POINT" AND MISREPRESENTS THE LAW BY QUOTING FROM AN ISOLATED CASE WITHOUT LOOKING AT THE CONTEXT.

¶ 9 The majority does not attack the opinions relied upon herein regarding the history of the sanctity of stipulations and their place in the resolution of issues before the trial court, **because it cannot.** Rather, the majority takes issue with the statement that "[t]he majority decides the cause on an issue which was never presented to the trial court and which it raises *sua sponte*." In so doing, it again "misses the point." The fact that the parties may have mentioned in closing arguments a statute **which their stipulations make inapplicable** will not justify the kind of judicial avarice represented by the majority's ignoring **the specific stipulations made and presented to the trier of fact as governing the cause.**

¶ 10 The majority's reference to the syllabus in *First Nat'l Bank of Cordell v. City Guaranty Bank of Hobart*, 1935 OK 1105, 174 Okla. 545, 51 P.2d 573 as standing for the proposition that parties may not affect the law applied to a cause by the Court through the utilization of stipulations is misplaced. In *First Nat'l*, the Court determined that the garnishee could not affect the jurisdiction of the trial court by stipulation. The holding in *First Nat'l* is consistent with case law which

---

11. Journal entry of judgement filed on February 15, 2006, appearing at pp. 117–18 of the record on appeal and providing in pertinent part:
"... The parties stipulated and agreed on the record that the Court's adjudication of Tile 12 O.S. § 95(A)(1) as the applicable statute of limitations herein, would result in a time bar of Plaintiff's action and that final journal entry of judgement should thereupon be entered. The Parties stipulated and agreed on the record that the Court's adjudication of Title 12A O.S. § 3–118(a) as the applicable statute of limitations herein, would result in the case

proceeding to Trial on the remaining issues....
The Court upon review of all the parties stipulations of record, the exhibits admitted into evidence by stipulation on the record, the Briefs of the parties and the parties oral arguments on the statute of limitations issue does now hereby ORDER, ADJUDGE and DECREE as final judgement here that Title 12 O.S. § 95(A)(1) is the applicable statute of limitations on Plaintiff's promissory note action and that Plaintiff's action is time barred...."

refused to allow parties' stipulations to confer jurisdiction where none existed.[12]

¶ 11 In a more recent decision, *State ex rel. State Ins. Fund v. JOA, Inc.*, 2003 OK 82, 78 P.3d 534, we held that the State Insurance Fund **would be bound by its stipulation during litigation that a specific attorney fee statute would apply to the action.** In so doing, we recognized that the Court was being presented with a stipulation of law. We also acknowledged that limitations existed on stipulations **involving the power and structure of government.**

¶ 12 The *JOA* Court relied heavily on a cause authored by Justice *Opala, Strelecki v. Oklahoma Tax Comm'n*, 1993 OK 122, 872 P.2d 910. In that case, we noted that the Tax Commission had entered a stipulation on an issue of law and taken inconsistent positions on issues of law. In addressing the extent to which the Tax Commission was bound by its counsel's argument in the litigation, the *Strelecki* Court stated the following:

> A party on appeal cannot take a position inconsistent with that maintained before a trial tribunal. While **this court** may decide a public-law case on dispositive issues, **it will not relieve a party of a solemn commitment to a position argued both below and on appeal unless it is so contrary to the applicable law that it would amount to an *ultra vires* act . . . .** The Commission will not be heard—at this late hour—to deny liability upon a changed interpretation of the state's remedial regime for refunds. The government stands before us on the footing of an ordinary appellee. It will not receive a more favorable treatment than that afforded other appellate litigants in a similar situation. [Footnotes omitted. "Bold" added for emphasis.]

The above quotation is supported by authority recognizing that: **neither party on appeal will be allowed to change the theory of the case from that on which it was presented**

to the trial court;[13] and, **parties are bound in the appellate court by the theories on which a case was tried below.**[14] Nevertheless, **the majority here strips private parties of the protections granted by this Court's jurisprudence on stipulations** where it would not do so to a State agency. There can be no justice in such a result.

## THE CONCURRING OPINION LENDS NO CREDENCE TO THE MAJORITY POSITION.

¶ 13 For the most part, the concurring opinion is interesting in what it does not do. First, in its exposition on what it perceives as being the dividing line between the duties of a trial court and those of appellate adjudicator, it finds little support in Oklahoma law. It does rely upon an opinion authored by Justice Opala, *Broadway Clinic v. Liberty Mutual Ins. Co.*, 2006 OK 29, 139 P.3d 873, as one such cause which delineates the differences between a trial court's fact finding and this Court's appellate review. In that opinion, Justice Opala wrote the following:

> " . . . **It is not the function of this court to make first-instance determinations of fact or legal questions which have been neither raised nor assessed at *nisi prius* . . . .**" [Bold added.]

As noted, the issue upon which the majority decides this cause was merely mentioned in arguments before the district court. It was not presented as a deciding factor for consideration by the trial tribunal.

¶ 14 The second thing which is interesting for its lack of discussion by the concurring opinion is any attempt to distinguish *Strelecki v. Oklahoma Tax Comm'n*, 1993 OK 122, 872 P.2d 910. Justice Opala authored *Strelecki* in which he emphasized that this Court will not relieve parties of the "solemn commitment" taken before the finder of fact.

12. *Jacobs v. Real Estate Mort. Trust Co.*, 1926 OK 620, 122 Okla. 1, 249 P. 930; *Continental Baking Co. v. Campbell*, 1936 OK 200, 176 Okla. 218, 55 P.2d 114; *Pinkston Hardware Co. v. Hart*, 1935 OK 674, 172 Okla. 566, 46 P.2d 501.

13. *Agricultural Ins. Co. v. Kouba*, 1956 OK 70, 294 P.2d 583.

14. *Chrysler Corp. v. Walter E. Allen, Inc.*, 1962 OK 189, 375 P.2d 878; *Griswold v. Public Serv. Co. of Oklahoma*, 1951 OK 342, 238 P.2d 322.

## DUE PROCESS CALLS FOR ADEQUATE NOTICE TO A PARTY WHOSE RIGHTS MAY BE ADVERSELY AFFECTED BY JUDICIAL ACTION.

¶ 15 Even if the result which the majority proposes would be appropriate under its analysis, it cannot bind these parties. To do so would be patently unfair. It "changes the rules of the game" which, heretofore, had been settled by precedent-setting jurisprudence at the time the cause was heard by the trial court. Due process requires adequate notice to parties whose rights may be adversely affected by judicial action. As Justice Opala stated for the majority in footnote No. 21 of *McDaneld v. Lynn Hickey Dodge, Inc.,* 1999 OK 30, 979 P.2d 252:

> "The standard of fairness exacted by the Due Process Clause mandates that notice meeting minimum constitutional standards precede judicial action.... Notice must be reasonably calculated to inform interested parties of every critical stage so as to afford them an opportunity to meet the issues at a meaningful time and in a meaningful manner...." [Citations omitted.]

Here, all the parties, along with the trial court, will be amazed to discover that the rules they all thought were applicable are inapposite to this proceeding. Due process necessitates, just as it did in *McDaneld,* that the majority opinion be given completely prospective application.

### CONCLUSION

¶ 16 Before today, stipulations were solemn admissions binding on the parties and the court.[15] They were agreements between counsel concerning the business before the court and were a favored means to shorten, clarify or settle litigation.[16] Stipulations have served as evidentiary substitutes dispensing with the need to take testimony.[17] Through the use of stipulations, parties could expand or contract issues for determination.

Having done so, they were bound by the same.[18] **That was the well-settled law in Oklahoma before today's majority opinion.**

¶ 17 Today's pronouncement is a death knell to trial practice and procedures as we and the practicing bar have known it for over nine decades. Every case, now in the appellate pipeline along with those to be appealed in the future will be adversely affected. No longer may trial stipulations be agreed to and faithfully followed, as did the trial court below, with any confidence. Instead, the parties, the sitting trial judges, and the practicing bar must realize that such stipulations are now "fresh meat" for any appellate court to carve up as it sees fit. Those tribunals are now free to go outside the stipulated records and "make it up as they go along."

¶ 18 I cannot now nor shall I ever in the future turn this Court into a "Supreme Trial Court" with the unlimited ability to give "overs" where none have heretofore been allowed. To do so, would require that ninety-five years of precedent be trampled and result in my violating my oath of office. As I will do neither, I dissent.

¶ 19 The only way to guarantee that the litigants here and those who may have made stipulations upon which trial tribunals have relied in their decisions to be guaranteed the constitutional protections of due process is to make the majority's pronouncement completely prospective. In so doing, the change in stipulation practice forecasted by the majority opinion would have **no effect in the present cause or in those now pending in the appellate pipeline.**[19]

---

**15.** *Bonner v. Oklahoma Rock Corp.,* see note 1, supra; *State ex rel. Trimble v. City of Moore,* see note 1, supra.

**16.** *Nanonka v. Hoskins,* see note 1, supra.

**17.** *State v. Torres,* 2004 OK 12, ¶ 29, 87 P.3d 572.

**18.** *Bruner v. Burch,* see note 1, supra.

**19.** *McDaneld v. Lynn Hickey Dodge, Inc.,* see note 5, supra.